FRED ELIHINGER AND LONIE ELIHINGER, CLAIMANTS, RESPONDENTS, v. WOLF HOUSE FURNISHING COMPANY, LINCOLN HOUSE FURNISHERS, INC., EMPLOYER, CONSOLIDATED UNDERWRITERS INSURANCE COMPANY, INSURER, APPELLANTS.—72 S. W. (2d) 144.

St. Louis Court of Appeals. Opinion filed June 5, 1934.

*Oliver & Oliver, Elmer A. Strom* and *E. B. Simpson* for appellants.

*Dearmont, Spradling & Dalton* for respondents.

McCULLEN, J.—This is an appeal by the employer and insurer from a judgment of the Circuit Court of Cape Girardeau County, affirming a final award of the Workmen's Compensation Commission, awarding death benefits to claimants as partial dependents of a deceased employee of the appellant employer.

Claimants having duly filed their claim for compensation, the employer and insurer filed an answer in which they denied that claimants were in any way dependents of the deceased employee. The cause was heard before a referee of the Workmen's Compensation on January 19, 1933. At the hearing it was stipulated and agreed by and between the parties that on or about September 9, 1932, the employee sustained an injury by accident arising out of and in the course of

his employment with the employer; that the employer and employee were operating under the Missouri Workmen's Compensation Law, and that all liability under such law was fully covered by the insurer; that the employer had notice of the accident and that the claim for compensation was duly filed within the time prescribed by law. It was further stipulated and agreed that the employee died on October 20, 1932, as a result of the accident, and that the employee had worked for the employer for a period of twenty-five and five-sevenths weeks preceding the accident, and had received wages at the rate of $15 per week during that period. It was also stipulated and agreed that for the purpose of any award, the average weekly wage should be computed at $15, and that the insurer had paid as compensation to the employee, before his death, the sum of $48.05, and had also paid $150 for his funeral expenses.

The testimony at the hearing before the referee, showed that the employee was twenty-one years and eleven months old at the time of his death; that he was single and unmarried and made his home with his father and mother, the claimants herein; that the members of the household consisted of Arnold Elihinger, the employee, Fred Elihinger, the employee's father, Lonie Elihinger, employee's mother, and the employee's maternal grandmother. Prior to attaining his majority, the employee had been employed by the International Shoe Company, at Cape Girardeau, and the money he received as wages for that employment was given to his mother. He continued to deliver to his mother the wages he received from that employment until after he reached the age of twenty-one years. In March, 1932, a few months after he was twenty-one years old, he quit his employment at the International Shoe Company and thereafter went to work for the employer herein.

At the time of his death the employee was earning $15 a week, which was almost invariably paid to his father, who would take it home and give it to the mother of the employee, along with $13 a week which the father earned as an employee of the same employer. The combined wages of father and son, totaling $28 per week, thus turned over to the mother of the employee, were kept by her in one pocket-book, and used as a common fund for the payment of rent, for buying clothing for the members of the family, for the purchase of groceries and supplies and for the payment of bills for light and water, as well as other incidental expenses of the home. Sometimes the father paid the rent for the home, and sometimes the mother did so, but whoever paid it, used money out of the common fund made up of the earnings of father and son.

The testimony showed that the earnings of the father and the earnings of the son were never kept separate, but were commingled, and that the money earned by them had always been handled in that man-

ner from the time the son began to earn money at the age of sixteen years.

The family occupied a four room house in the City of Cape Girardeau as their home. The son occupied one of the rooms at the home as a bedroom, but also used all the other rooms thereof the same as the other members of the family, and ate at the same table with them.

The testimony showed that the mother took care of the son's laundry and mending needs, and when the son wanted money for his own use, he would ask his mother for it and she would give it to him out of the common fund; that the average amount of money thus received by the son for his own personal use during the last year of his life did not exceed $2 per week, and was used by him for the purchase of clothing for himself, and for his own incidental personal expenses. The family had an automobile, the title to which was in the son's name. The father and son each used the automobile individually and for the family's purposes. The automobile was also used in the employer's business, but when so used the employer paid for the gasoline and oil consumed.

Claimant Fred Elihinger, father of the deceased employee, testified; "We did not have any other source of income other than that of myself and my son." He said that his son did not, at any time, spend much money and that the son had not bought a suit of clothes during the last year of his life; that the son would go to a moving picture show not more than three times in a year, including the year before he died.

Other expenses paid out of the common fund, as shown by the testimony, were as follows: For insurance on the son's life, $5.20 a year; for purchase of the above mentioned automobile, including the first and subsequent part payments, $100; for city and State automobile licenses, $21.50; for tires for the automobile, $10; for gasoline and oil for the automobile, approximately $2.50 per month. The testimony also showed that the minimum value of board and room, in Cape Girardeau, approximately the same as that received by the deceased employee, was $20 per month.

Claimant Lonie Elihinger, mother of the deceased employee, gave testimony to the same general effect as that of her husband. There was other evidence, but it is unnecessary to present it here under the issues involved in this appeal.

On January 23, 1933, the referee made an award in favor of claimants as an estate by the entirety, in the sum of $6 per week for two hundred seventy-nine and one-third weeks, subject to an attorney's lien of $100, payable at once to Dearmont, Spradling and Dalton, attorneys for the claimants, and also subject to a credit of $48.05, previously paid the deceased by the insurer. The referee found the value

of the board furnished the employee, and the money used for his personal expenses amounted to $6.62 per week, thus making the amount of contribution to the dependent parents $8.38 per week, and that said dependents were, therefore, 55-13/15 per cent of a total dependent, which amounted to $1,676 payable in installments of $6 per week.

Upon an application by the employer and insurer for review of the award, the full commission of the Workmen's Compensation Commission, on March 31, 1933, set aside the award of the referee and made a new award in favor of the claimants as tenants by the entirety for the sum of $10 per week for three hundred weeks, and burial expenses of $150, subject to a credit of $48.05 paid to the deceased employee prior to his death, and subject to a credit of $150 for burial expenses paid by the insurer. Also subject to an attorney's lien in the sum of $500, in favor of Dearmont, Spradling and Dalton, attorneys for claimants, to be paid to the attorneys direct in a lump sum.

The commission rules that although claimants were only partial dependents, there was nothing in the law or the decisions of the courts to authorize a deduction of the benefits which the deceased had received out of the common fund, regardless of whether he was a minor or an adult at the time, and that the compensation to be paid claimants, therefore, should be the same as if they had been total dependents, and that they were, therefore, entitled to the total benefit less the amount paid to the deceased prior to his death.

The issues in this case, as stated by appellants, employer and insurer, in their brief, are confined to the question, "whether the claimants Fred Elihinger and Lonie Elihinger, the father and mother of the deceased employee, respectively, were dependents of the deceased employee, and if so the amount of the award to be made, if any, to them or either of them."

Appellants contend that this court should reverse the judgment of the circuit court affirming the final award of the commission, and in support of their contention argue that the deceased employee was more than twenty-one years of age at the time he received the injuries which resulted in his death and there was, therefore, no legal obligation resting upon him to render support to his father and mother. Appellants strongly urge that, as a matter of law, on this record, there could be no dependency existing which would entitle the parents to an award in their favor. The argument thus presented fails to take into consideration the plain and simple definition of the word "dependent" which the Legislature has provided in the Workmen's Compensation Act itself. It is as follows:

"The word 'dependent' as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who

is actually dependent for support, in whole or in part, upon his wages at the time of the injury." [Section 3319 (d), R. S. Mo. 1929 (Mo. St. Ann., sec. 3319, pp. 8255, 8256).]

Following the above definition of "dependent," the statute, in subdivisions 1 and 2 of the same subsection (d) above referred to, describes the persons who shall be conclusively presumed to be totally dependent for support upon a deceased employee, after which it provides, in the latter part of subdivision 2, as follows:

"In all other cases questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury. . . ."

It will be observed that there is nothing said in the definition of "dependent," in the statute, about a minor employee, or an adult employee. The language is:. "A deceased employee." Under the plain and unambiguous terms of this statute, in cases of claimants not within the class of those conclusively presumed to be totally dependent, the only elements required to be proved to show dependency are: First, that the alleged dependents are relatives by blood or marriage of the deceased employee; and second, that they were at the time of the injury actually dependent for support, in whole or in part, upon the wages of the deceased employee.

The claimants herein, being the father and mother of the deceased employee, and therefore possessing the necessary relationship to him, it is clear that they come within the above mentioned first requirement of the statute. They are not, however, among the persons named by the statute as conclusively presumed to be totally dependent for support upon the deceased employee. Their case, therefore, with respect to the above mentioned second requirement of the statute, falls within the classification of "all other cases," and the question as to whether or not they were, at the time of the injury, actually dependent for support, in whole or in part, upon the wages of the deceased employee, must "be determined in accordance with the facts at the time of the injury," as provided in the latter part of subdivision 2 of subsection (d), section 3319, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 3319 (d), pp. 8255, 8256).

In defining the word "dependent," nothing whatsoever is said in the statute, which requires proof of a legal obligation on the part of an employee to render support to a claimant, as a necessary element of dependency.

Notwithstnding what appears to be a plain and clear definition of "dependent" in the statute, appellants argue that the word "dependent" is not defined therein and that "dependent" therefore means only "legal dependents." From this it is contended that the son of claimants herein, having been an adult at the time of his injury and death, was under no "legal obligation" to render support to claim-

ants, hence there was no dependency. They rely mainly on the case of Hill v. Nafziger Baking Co. (Mo. App.), 57 S. W. (2d) 773. In that case the court said:

"The act. designates the class who are dependents, but it does not define the term 'dependency.' In the absence of legislative definition of the term, courts will hold it means legal dependency, for the reason that courts will enforce legal obligations but will not enforce mere moral duties."

It is true, as stated in the Hill case, the word "dependency" is not defined in the statute, but appellants are in error in stating in their brief that the word "dependent" is not defined therein. We are of the opinion that the Legislature, having provided a clear definition of the word "dependent," it was unnecessary to define the word "dependency." If the facts in a given case show a claimant to be "dependent" it necessarily follows that such claimant occupies the status of "dependency." To say that the Legislature did not define the word "dependent" is to ignore completely the very language of the statute, which, it will not be amiss to present again:

"The word 'dependent' as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of the injury." [Section 3319 (d), R. S. Mo. 1929 (Mo. St. Ann., sec. 3319 (d), pp. 8255, 8256).]

If the foregoing language does not constitute a definition of "dependent," we do not know what term could be more appropriately applied to it.

We think it is incorrect to say that the Legislature has failed to define "dependent" merely because it gave a broad definition of that word instead of going into particulars to describe various kinds of "dependents." We believe that the use of such a broad definition, and the absence therefrom of the term "legally liable," when contrasted with subdivision 1 immediately following, wherein the term "legally liable" appears in the provision as to a wife's dependency upon a husband, shows a clear legislative intention to exclude the element of legal liability of a deceased employee to support a claimant, in all cases, except in the case of a wife who is dependent upon a husband "legally liable for her support."

In our opinion the legislative intention to provide a broader definition of "dependent" than that contended for by appellants is clearly manifested and, whether such definition be wise or unwise, we have no authority to restrict its meaning by injecting into it an element not mentioned by the Legislature.

In Schmelzle v. Ste. Genevieve Lime & Quarry Co. (Mo. App.), 37 S. W. (2d) 482, 485, this court, in affirming an award in favor of claimant therein, said:

"The second charge, that the evidence failed to show dependency in fact, is equally without merit. It showed that the father and his deceased son were the wage earners for the family; that the claimants and the deceased lived in a common household, and ate at the same table; and that the contributions made by the deceased went into the regular family fund, which was drawn upon whenever necessity required."

In Sweeny v. Sweeny Tire Store Co. (Mo. App.), 49 S. W. (2d) 205, 208, the record showed that the deceased employee, at the time of his death, was twenty-nine years of age; that he was unmarried; that he lived at home with his father and mother, who, with the deceased employee, constituted the entire family. It was further shown in that case that the deceased employee regularly contributed $15 a week to his mother, which went into the general budget to help maintain the home. On frequent occasions he also bought fruit and vegetables for the family table. He would also make an occasional extra donation to his mother, or buy articles of clothing for her. Out of such donations the mother furnished board and lodging to the deceased, and did his washing, ironing and mending. In affirming the judgment of the circuit court, which affirmed the final award of the commission in that case in favor of the mother as a partial dependent, this court said:

"The act itself defines a dependent as a relative of the deceased by blood or marriage, who was actually dependent for support, in whole or in part, upon his wages at the time of the injury. [Section 3319 (d), Revised Statutes 1929.] Furthermore, as our act is written, it is the dependency of the claimant, and not his financial injury, which is the test of his right to compensation." [Sweeny v. Sweeny Tire Store Co., supra.]

It must be remembered that the Workmen's Compensation Law was enacted with the deliberate purpose on the part of the Legislature of changing drastically in many respects the legal relationships of parties involved in accidents arising out of and in the course of workingmen's employment, as those relationships existed under statutes and under the common law, prior to the Workmen's Compensation Act. That act was intended, with certain exceptions therein named, but not involved here, to be a complete code to cover the whole field in dealing with compensation for injuries and deaths resulting from accidents arising out of and in the course of such employment. It abolished old rights, duties, obligations and remedies, and established new rights, duties, obligations and remedies deemed to be necessary to the public welfare in the light of industrial and social economic experience. In undertaking to apply its many sections and subsections, we must, if we are to carry out the true intent and purpose of the Legislature, look to the act itself for guidance.

Principles of law and deductions therefrom which might have been applicable under the old relationship of master and servant, as well as refinements of legal principles applicable to other relationships under the general law, both statutory and common, even though conveniently analogous, have no application in cases where, as in this case, the Workmen's Compensation Law provides a clear and unambiguous definition and prescribes a complete rule to govern in the field of its operation. We must, therefore, carefully avoid applying to cases within the Workmen's Compensation Law, reasonings and principles which formerly might have been proper as bases of decision, but which, since the passage of that act are no longer applicable to such cases.

The law specifically provides that all of its provisions shall be liberally construed. [Section 3374, R. S. Mo. 1929 (Mo. St. Ann., sec. 3374, p. 8293).]

Viewing the question before us in the light of our duty to give the law a liberal construction, and to carry out the intention of the Legislature, as expressed in the Workmen's Compensation Law itself, we are unable to agree with the contention of appellants that the definition of ''dependent,'' prescribed by the Legislature, should be construed so as to require proof of a legal obligation, or legal liability of the deceased employee to render support to claimants, as a prerequisite to an allowance of benefits for their son's death. The statute itself having provided a complete, clear and unambiguous definition of the word ''dependent,'' and a complete rule for determining dependency, we are not authorized to go outside of its provisions to find a definition of that word, and a rule to apply herein. To sustain the contention of appellants in this respect would require us to read into the statute, language which does not appear therein. This, we are not authorized to do.

We are of the opinion that it is immaterial, in this case, whether the deceased employee was, or was not under a legal obligation to support his parents in view of the statutory definition of ''dependent.'' It having been shown that the claimants herein were ''dependents'' of the deceased employee, as defined in the Workmen's Compensation Law itself, that law creates the obligation of the employer to pay them the death benefits provided for therein.

The evidence in this case shows without dispute that the wages earned by the deceased son of the claimants from the time he was sixteen years of age up until the time of his death were delivered by him to his mother, and such wages, along with those earned by his father, made up the common fund from which all of the expenses of the household, including his own personal expenses, were paid. The evidence further shows without dispute that the family had no source of income other than the wages of the father and the son.

The rule is well established that all reasonable favorable inferences must be drawn from the evidence to support the findings of the commission. This rule has been so often declared that no authorities need be cited to support it. Applying the rule to the facts in evidence, we believe that although no witness specifically testified that the wages of the son were necessary to support the family, it is not an unreasonable inference to say that the $13 per week wages of the father were insufficient to support the family and that it was necessary for the son to contribute all of his wages ($15 per week) to accomplish that purpose.

We are of the opinion that the evidence was amply sufficient to justify the finding of partial dependency of the claimants herein, and was also sufficient to warrant the award made. [Sweeny v. Sweeny Tire Store Co., supra; Schmelzle v. Ste. Genevieve Lime & Quarry Co., supra; Rasor v. Marshall Hall (Mo. App.), 25 S. W. (2d) 506, 507.]

It is urged by appellants that the circuit court and the commission committed error in failing to deduct from the award, the cost of the food, clothing and lodging furnished to the deceased by his parents.

In a case wherein a similar contention was made by the appellants therein, this court said:

"The last complaint, that the commission failed to deduct the cost of the food, lodging, and clothing furnished the deceased, is evidently well founded, but it constitutes no ground for a reversal, for, inasmuch as the act makes no provision for such deduction, the commission, in fixing the amount to be awarded to partial dependents, is not required to deduct such items of expense. [Clingan v. Carthage Ice & Cold Storage Co., 223 Mo. App. 1064, 25 S. W. (2d) 1084.] So it has been determined in the cited case, and there is nothing appearing in the record to take this case from within the scope of that decision." [Schmelzle v. Ste. Genevieve Lime & Quarry Co. (Mo. App.), 37 S. W. (2d) 482, 486.]

We see no reason for changing the views expressed in the above Schmelzle case and we, therefore, rule against appellants on this point.

It is contended by appellants that the compensation commission committed error in making an award allowing claimants herein total death benefits after making a finding of fact that the claimants were only partial dependents. They concede that the rule declared in several cases decided by the Courts of Appeals is contrary to their contention herein on this point, but they undertake to distinguish the case at bar from those cases by arguing that the deceased employee herein was an adult, whereas, the deceased employee, in the case referred to, was not an adult. We must hold against appellants on this point. Their whole argument thereon is based upon their main contention

in the case with respect to the question of dependency, which we have already decided against them.

We are of the opinion that the rule declared in Triola et al. v. Western Union Telegraph Co. (Mo. App.), 25 S. W. (2d) 518, is applicable to the case at bar. In that case the court was called upon to construe subsection (c) of section 3319, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 3319 (c), p. 8255), which reads as follows:

"If there be partial dependents, and no total dependents, a part of the death benefit herein provided in the case of total dependents, determined by the proportion of his contributions to all partial dependents by the employee at the time of the injury, shall be paid by the employer to each of such dependents proportionately."

The evidence in the Triola case showed that at the time of the death of the deceased employee therein, his father was earning an average weekly wage of $22.80; the brother of the deceased employee was earning an average weekly wage of $21, and the deceased employee was earning an average weekly wage of $15.24. The family consisted of ten members, the three workings members being the father and the two sons mentioned. The total family income made up of the wages of the father and the two boys amounted to $59.04 per week. In that case it was urged by appellants therein that the claimants were only partial dependents and, therefore, would only be entitled to recover 25.8 per cent of the total benefit, or an amount equal to such percentage of their dependence upon the deceased employee, which would be $786.39, instead of $3,048, which the commission had allowed and which allowance had been sustained by the circuit court on the theory that the claimants were totally dependent. Answering the contention of appellants, this court said:

"We are clearly of the opinion that the claimants here are only partial dependents. That fact is now conceded by counsel for claimants, and the question with which we are now concerned is the proper construction to be placed upon paragraph (c), which determines the amount that a partial dependent shall receive. : . . Now to determine the amount which partial dependents would receive we would have to use the above total as a basis, and under our construction of paragraph (c), if deceased had contributed two-thirds of his income to his parents, these parents as such partial dependents would be entitled to receive two-thirds of the total death benefit, *but where, as in this case, the partial dependents receive all of the employee's wages, then such claimants would be entitled to receive $13,048, or the same amount that total dependents would receive,* because the act provides that if there be partial dependents and no total dependents, the part of the death benefit which is to be paid such partial dependents, proportionately, shall be determined by the proportion of his contribu-

tions to all partial dependents." (Italics ours.) [Triola v. Western Union Telegraph Co. (Mo. App.), 25 S. W. (2d) 518, 520.]

In the case at bar the evidence shows that there are no total dependents and that the deceased employee contributed all of his wages to the common fund which was used for the support of the entire family, consisting of himself, his father, mother and maternal grandmother. We hold that the ruling and award of the commission were correct. [See also Clingan v. Carthage Ice & Cold Storage Co., 223 Mo. App. 1064, 25 S. W. (2d) 1084.]

Appellants contend that the maternal grandmother of the deceased, being a partial dependent, is entitled to a proportionate part of the award, and that, although ordinarily an employer is not concerned as to whom payments shall be made, yet, in this case, since the Statute of Limitations has barred the filing of a claim by the grandmother, the award of the commission should be set aside because it is not based on a finding of the extent of each claimant's dependency and did not take into consideration, and did not deduct the grandmother's portion of the benefits. This argument comes too late in this court. It was within the power of the employer to have brought in the grandmother as a party at the hearing before the referee, or before the commission. The employer did not see fit to do this and made no such point either before the commission, or in the circuit court. We believe appellants are not now in a position to complain of the award in this respect. [Schmelzle v. Ste. Genevieve Lime & Quarry Co. (Mo. App.), 37 S. W. (2d) 482, 485.]

Appellants contend that it was error for the commission to make the award to claimants as an estate by the entirety. The amount of the award to be paid by appellants, and the time of the payment of the installments thereon are in no way affected by requiring payments to be made to the claimants jointly, and since payment thereof by appellants will extinguish their obligation, we see no just reason for complaint by them on this ground. [Clingan v. Carthage Ice & Cold Storage Co., 223 Mo. App. 1064, 25 S. W. (2d) 1084, 1086; Gendron v. Dwight Chapin & Co. (Mo. App.), 37 S. W. (2d) 486, 489.]

We have carefully considered the various points and arguments presented by appellants and we are of the opinion that there is nothing in the record which would warrant interference on our part with the judgment rendered by the circuit court affirming the award of the commission.

It appearing that there is a conflict between our decision and opinion herein, and the decision and opinion of the Kansas City Court of Appeals in the case of Hill v. Nafziger Baking Co. (Mo. App.), 57 S. W. (2d) 773, the cause should be certified to the Supreme Court.

The judgment of the circuit court is, therefore, affirmed and the cause is certified to the Supreme Court. *Hostetter, P. J.,* and *Becker, J.,* concur.