## OCTOBER, 1938.

A. E. EVERARD, EMPLOYEE, RESPONDENT, v. WOMAN'S HOME COMPANION READING CLUB (CROWELL PUBLISHING CO.) EMPLOYER AND HARTFORD ACCIDENT AND INDEMNITY CO., INSURER, APPELLANTS.—122 S. W. (2d) 51.

St. Louis Court of Appeals. Opinion filed December 6, 1938.

*Albert I. Graff, Harold R. Koenig* and *Louis L. Hicks* for respondent.

*A. B. Lansing* and *Moser, Marsalek & Dearing* for Employer and Insurer.

McCULLEN, J.—This is an appeal by the employer and insurer from a judgment of the Circuit Court of the City of St. Louis affirming a final award of the Missouri Workmen's Compensation Commission in favor of the respondent employee, A. E. Everard.

The record shows that Everard filed his claim in due time for compensation; that the employer and insurer filed an answer denying that the employee suffered an accident arising out of and in the course of the employment, and denying the amount of wages claimed by the employee. A hearing on the claim was held before a referee of the Workmen's Compensation Commission, who, on July 20, 1937, made and filed with the Commission an award on hearing awarding the employee compensation at the rate of $20.00 per week for eight and one-seventh weeks, beginning as of January 1, 1937, the referee stating in his award: "The aforesaid compensation shall be subject to $100 paid by third party."

On July 27, 1937, the employer and insurer filed an application for a review of said award by the full Commission. On November 2, 1937, the full Commission made and filed its final award awarding the employee for temporary total disability the sum of $20 per week for eight and one-seventh weeks, beginning as of January 1, 1937, and for medical aid the sum of $22, the award being subject to a credit of $100, the amount received by the employee from the third party. As an additional finding of fact and ruling of law, the Commission stated:

"On review award dated July 20, 1937, is hereby modified with reference to the failure to make any allowance for medical aid. Employee expended $22.00 for medical treatment, and as the employer and insurer did not furnish him any treatment they are liable for same.

"As so modified, award dated July 20, 1937, is hereby affirmed."

According to the final award, the balance payable employee or dependents is $84.86.

Employer and insurer appealed from said final award to the Circuit Court of the City of St. Louis, where the award was affirmed. From the judgment affirming said award, employer and insurer have duly appealed to this court.

The employer and insurer contend that there was not sufficient evidence in the record to support a finding that the injury arose out of and in the course of the employment; and that the Compensation Commission erred in finding that the injury was compensable under the Compensation Act.

It appears from the record that Everard was employed by the Woman's Home Companion Reading Club as a solicitor to procure subscriptions for magazines. He was paid for his services entirely on a commission basis. During the year 1936 his earnings averaged $30 per week. On December 31, 1936, Everard and six others members of the selling crew in which he worked were directed to solicit subscribers in the southwest part of the City of St. Louis. The usual time for starting their work was around nine o'clock in the morning, but they were not required to start work at any particular time. They usually worked until four or five o'clock in the afternoon. On the date mentioned, Evarard started to work at nine o'clock in the morn-

ing, being at that time under the orders of Brookins, who was his immediate superior. Brookins directed Everard as to what streets to cover in doing his soliciting. During the morning in question, Everard canvassed from house to house selling magazines in the Morganford and Gravois district, continuing to canvass until sometime around noon. He sold one subscription during that morning. About noontime, Everard met Louis J. Brookins, the manager of the selling crew, and two other members thereof at Remley's Market near Morganford and Gravois Avenues, in the territory where he was soliciting business. It appears that Remley's Market is a large retail store near Kingshighway and Gravois Avenue in St. Louis, in connection with which there is a lunchroom. The record is silent as to whether or not they met by prearrangement.

Everard testified that he didn't have any fixed lunch hour; that he and Brookins and the other two members of the selling crew sat down to lunch together and discussed their business; that, during the time he was eating, he printed the name and address of the subscriber and the amount of the subscription on the back of an order that he had written that morning; that, while they were eating, Mr. Brookins told him what territory to work after lunch; that, after he had finished eating, he paid his check and started to leave the lunchroom, and, while walking toward the door, he stepped upon a large splinter which forced itself through the sole of his shoe and into his right foot.

Everard further testified that the manager of Remley's store sent him to Dr. J. C. Cornell, who treated him for about six or seven weeks; that, about six weeks after the accident, he made an attempt to resume his work of soliciting subscriptions, but was unable to do so; that, on February 26, 1938, he finally returned to work, and resumed steady employment, that his foot had healed but there remained a scar. He further testified that he was paid $100 by the Remley Market; and that he executed a release therefor; that the $100 included $22 for the doctor's bill.

Louis J. Brookins testified that, on December 31, 1936, he was the crew manager for the employer, having been so employed for about two years and a half, and was still employed in that capacity at the time of the hearing. Testifying as to the manner and method of carrying on the work, the witness said that they usually started work in the morning around nine o'clock, and worked up to four or five o'clock in the evening; that they had no set time to start or quit, and didn't have any definite time for the noon period; that some of the boys felt like working and did not even take a noon period but continued on working; that they usually "knock off as a rule around twelve or twelve thirty. It doesn't matter what time, and we might take an hour and might take twenty minutes."

The witness further testified that, on the day of Everard's injury,

"We were all in eating lunch on our lunch hour, and as we finished with our meal I told each man where to work in the afternoon." The witness then stated that Everard walked ahead of him as they left the lunch counter; that he noticed Everard stop for a minute and pick up his foot, after he started to walk, but was limping; that Everard went across the street, pulled off his shoe, and as he did blood squirted out; that he asked Everard what happened, and Everard said he had run a splinter in his foot; that Everard pulled the splinter out, and it was about five inches long. The witness testified that he then got in touch with the manager of the store and explained the situation, and the manager sent them to a doctor nearby on Gravois Avenue. The witness stated that he could not say that he saw Everard "backing an order" during the noon hour of that particular day, although he said, "We do it lots of times." It appears that "backing an order" means the act of the solicitor in printing the name of a subscriber and the date and amount of the subscription on the back of the order. In this connection, the witness testified:

"Q. State whether or not it is customary to back orders during the noon hour? A. Some do and some don't. I don't recall whether he backed an order on this particular occasion; I couldn't say. I couldn't say he didn't."

The witness was asked on cross-examination whether they have to back orders at the noon hour, and answered: "In selling, in our business we don't have to do anything we don't want to." On redirect examination, the witness testified that backing an order is incidental to the work. The witness further testified that, when they started out in the morning, he gave the members of the selling crew a definite section to work in during the morning; and that, if they had enough, they continued during the afternoon to work in that section, but, if they didn't have enough, he would give them another section in which to do their soliciting.

Appellants contend that there is no evidence connecting the origin or cause of the accident with either the type of work or the specific acts done in pursuance thereof by the employee; and that, no casual connection having been shown, there is nothing to support the finding that the injury was one "arising out of the employment," as required by section 3301, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 3301, p. 8232). It is true, as contended by appellants, that, to be compensable, there must be evidence adduced to show that the injury arose out of and in the course of the employment; and that a showing of either element alone, without the other, is not sufficient to justify an award of compensation. [Smith v. Levis-Zukoski Merc. Co., 223 Mo. App. 743, 14 S. W. (2d) 470.] We are of the opinion, however, the evidence in the case at bar is sufficient to show that the injury of Everard "arose out of" as well as "in the course of" his employment.

The case of Stone v. Blackmer & Post Pipe Co., 224 Mo. App. 319, 27 S. W. (2d) 459, is mainly relied on by appellants to support their contention. In that case, an employee was killed by bricks from a falling smokestack which was blown down during a tornado. He was on the premises of his employer, and was performing his duties at the time he met his death. We believe that case is clearly distinguishable from the case at bar. That case falls within the class of cases involving an "act of God" as the cause of the employee's death, and we think it is not applicable to the case at bar.

In Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601, our Supreme Court said that, since the adoption of Workmen's Compensation Acts in England and in this country, there have been many definitions of the phrase "arising out of . . . his employment;" that some of these definitions, framed by eminent courts in view of the facts of particular cases before them, have been repeated so often by other eminent courts that they have become formulae, to someone of which it is thought the facts of every case must conform in order for compensation to be allowable therein. After citing cases, the court went on to say:

"There is no justification for investing the words 'arising out of . . . his employment' with a technical meaning; they are plain, ordinary, and everyday words, and should therefore be given their plain, usual, and ordinary meaning. *Every case involving their application should be decided upon its own particular facts and circumstances and not by reference to some formula.*" [Leilich v. Chevrolet Motor Co., 328 Mo. 112, 122, 40 S. W. (2d) 601, 605.] (Italics ours.)

Furthermore, in passing upon the question as to whether or not the award of the Compensation Commission is justified by the evidence, the established rule is that an appellate court considers only the evidence favorable to the award, and all reasonable, favorable inferences must be drawn from the evidence in support of the conclusion of the Commission. [Probst v. St. Louis Basket & Box Co. (Mo. App.), 52 S. W. (2d) 501; Jones v. Century Coal Co. (Mo. App.), 46 S. W. (2d) 196; Noto v. Hemp Co. (Mo. App.), 83 S. W. (2d) 136; Elihinger v. Wolf House Furn. Co., 230 Mo. App. 648, 72 S. W. (2d) 144; Elihinger v. Wolf House Furn. Co., 337 Mo. 9, 85 S. W. (2d) 11.]

Considering the evidence in the case at bar in the light of what our Supreme Court said in Leilich case, *supra*, and having in mind the established rule referred to, we find that the employee was injured at a place within the district that he had been directed by his employer to canvass. The injury occurred within the hours of his employment. He had been canvassing in that district during the morning, and stopped for lunch at a convenient place within the district. He there met the manager of the selling crew and two other members of the crew, with whom he had lunch. During the lunch period, he carried

on his work for the benefit of his employer by "backing an order" which he had received that morning. The manager of the crew testified that "backing an order is incidental to the work." During the lunch period the crew manager and employee discussed the business they were carrying on for the employer, and the employee received orders from the crew manager directing him where to continue his canvass for subscriptions during the afternoon. He had finished his lunch and was actually on his way to carry out the orders of the crew manager to resume active canvassing when he received his injury. We think it is clear, under the facts and circumstances of this case, that the employee cannot be said to have departed from his employment merely because he stopped canvassing long enough to obey the call of nature for food. On the contrary, we think he was not only still within the course of his employment, but that the injury arose out of the employment because of the very nature of the particular employment herein. We believe that, in view of the nature of the employment and the manner in which it was carried on, the act of the employee in stopping active canvassing long enough to visit the restaurant for food, where he met Brookins, even though it was without prearrangement, was reasonably incidental to the kind of work which they were all engaged in. We do not have in his case a shop or factory, or premises of an employer, as in the case of Stone v. Blackmer & Post Pipe Co., *supra*, and cases of a similar nature cited by appellants. The whole district in which the employee herein was carrying on his work of canvassing constituted the employee's place of work. [Wahlig v. Krenning Schlapp. Gro. Co., 325 Mo. 677, 683, 684, 685, 29 S. W. (2d) 128, 130, 131.] Even though he was not directed to go to any particular place for his lunch, and had no particular lunch time, it was nevertheless in the ultimate interest of his employer and in furtherance of and reasonably incidental to the work he was doing that the employee stop within the district to eat lunch, inasmuch as the evidence shows that there was a reasonably proper and convenient place therein to do so, and it was further in the interest of the employer that the employee confer with and receive orders from Brookins concerning further canvassing during the afternoon of that day. It will be recalled that Brookins, the crew manager, testified that he assigned the employees to various streets to do their canvassing; and that it was the custom that, if they did not have enough to carry them through the day, he would assign them additional streets to be canvassed during the afternoon. It is undisputed that the crew manager, during the lunch period, actually did give orders to the employee as to his work for the remainder of the day. Mr. Brookins himself, after describing what they did during the lunch period, and stating that as they finished their meal he told each man where to work in the afternoon, said, "We all started to go to work at that time."

This case is clearly distinguishable from a case where an employee leaves the shop, factory, or premises of an employer, and, for a fixed and designated period of time, goes where he pleases for his noonday meal, or goes upon a mission solely for his own pleasure or benefit, during which period he is injured.

In Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S. W. (2d) 441, the employer and insurer contended that the death of the employee involved therein did not ''arise out of and in the course of his employment.'' In that case the evidence showed that the death of a traveling salesman was sustained while he was traveling between two towns on his regular route after 12:30 A. M.; that he had mailed orders to his employer at 9:30 P. M., after which he had played cards at a restaurant until 12:30 A. M., before starting on his trip to the next town. Our Supreme Court held in that case that the accidental death arising out of and in the course of employment of the traveling salesman covered both the time and place of travel, as well as the selling of goods. It was further held in that case that, even though the employee temporarily abandoned his employment for work or pleasure of his own but resumed his employment prior to the accident, such accident arose out of and in the course of employment.

A recent example of the construction placed upon the words ''arising out of and in the course of his employment'' will be found in the case of Buckner v. Quick Seal, Inc. (Mo. App.), 118 S. W. (2d) 100. In that case the employee, while riding as a passenger on a train, was suddenly and without provocation assaulted by a drunken man. The employee was a repairman, whose work took him to various points in the United States. In doing his work, he traveled from place to place by railroad train. At the time of his injury, he was enroute as a passenger from New Orleans to Jacksonville, Florida, to finish a repair job for the employer at the last-named place. The defendants employer and insurer in that case contended, as do the appellants in this case, that, by the use of the words ''arising out of,'' the statute requires that the danger from which the injury occurred must have inhered in and arisen out of the employment; and that any accident to the employee to which all persons similarly situated were equally exposed, having no connection with the particular employment, was excluded from the operation of the compensation statute. It was further urged by the defendants in that case that a risk common to the business, which was not increased by the hazards of the employment, did not come within the above-quoted words of the statute. The Kansas City Court of Appeals, in passing upon the question as to whether the assault on the employee was a compensable injury, held that the question to be determined was whether the employment exposed the employee to the risk by requiring him to be on the train, and not whether the risk was common to all on the train. The judgment awarding compensation to the employee was affirmed.

Under section 3374 of the Workmen's Compensation Law (Mo. Stat. Ann., sec. 3374, p. 8293), we are required to give all provisions of the law a liberal construction. In the light of this rule, we are of the opinion that the injury to the employee in the case at bar clearly arose out of and in the course of his employment. Any other conclusion, in the light of the evidence herein, would require a narrow and restricted construction of the compensation law. In view of all the evidence, including the testimony of Mr. Brookins, the crew manager, that, "We all started to go to work at that time," we think the only reasonable inference is that the employee was at the time of his injury carrying out the duties of his employment. We hold that the compensation commission was warranted in finding from the evidence that the injury arose out of and in the course of his employment.

It is next contended by the appellants that the employee, by settling with the third party for less than the amount of compensation eventually awarded by the compensation commission, impaired the right of subrogation given to the employer by the compensation act, and should not now be entitled to recover any additional amount from the employer and insurer. Appellants argue that, the compensation statutes having become a part of the contract of employment, the employee violated the terms of that contract by negotiating a private settlement with the third party; and that the contract, as expressed by the statutes, should not be enforcible against the employer and insurer after such breach.

The statute which provides for subrogation of the employer to the right of the employee or dependents against a third person is as follows:

"Where a third person is liable to the employe or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employe or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employe or dependents, but such employer may recover any amount which such employe or his dependents would have been entitled to recover. Any recovery by the employer against such third person, in excess of the compensation paid by the employer, after deducting the expenses of making such recovery shall be paid forthwith to the employe or to the dependents, and shall be treated as an advance payment by the employer, on account of any future installments of compensation." [Sec. 3309, R. S. Mo., 1929 (Mo. Stat. Ann., sec. 3309, p. 8244).]

Appellants cite McKenzie v. Missouri Stables, 225 Mo. App. 64, 34 S. W. (2d) 136, as showing that the employer and employee had between them but one cause of action against the third party; that the one cause of action having been settled privately by the employee, nothing is left of the employer's beneficial interest; that the employer

has been deprived of his statutory right to recover in full the compensation paid; and that the provision of the statute intended to protect the employer has been nullified.

The case of McKenzie v. Missouri Stables, *supra*, does not support appellants' argument. In the McKenzie case the court did not pass upon any such point as this point which appellants present in the case at bar. The McKenzie case held that an employer liable for compensation may, in his or its own name and without joining the employee, sue a stranger liable for the injury; also that an employee may, in his own name, sue a stranger responsible for his injury without joining the employer. That case further held that, where an employee is injured through the fault of a third party, the party suing and recovering, whether he be employer or employee, becomes an express trustee for the other party beneficially interested to the extent of such other party's interest. It is true the McKenzie case did hold there was but one cause of action, but there is nothing in the opinion in that case to warrant the view of appellants herein that an employee's settlement with a negligent third party of his common law claim for damages against such third party destroys or impairs the right to subrogation given the employer by the statute mentioned.

In the case of Hugh Murphy Const. Co. v. Serck, 104 Neb. 398, 177 N. W. 747, the Supreme Court of Nebraska was required to pass upon the subrogation section of the compensation act of that state. The facts in that case were similar to those in the case at bar in that a settlement had been made between the employee and the negligent third party.

Section 3651, Revised Statutes of Missouri, 1913 of Nebraska provided for compensation to be paid by the employer for personal injuries to or for the death of an employee by accident arising out of and in the course of his employment, without regard to the negligence of the employer, being in this respect exactly similar to our statute, section 3301, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 3301, p. 8232). The subrogation section of the Missouri Workmen's Compensation Law, which we have set out above, is, word for word, the same as section 3659, the subrogation section of the Nebraska Workmen's Compensation Act which was in force at the time the case of Hugh Murphy Const. Co. v. Serck, *supra*, was decided by the Supreme Court of Nebraska in 1920. The Missouri Compensation Law went into effect in 1926, long after the Supreme Court of Nebraska construed the subrogation section of the Nebraska Workmen's Compensation Act. That court held, in the case mentioned, that an injured employee was entitled to compensation from his employer for an accident arising out of and in the course of his employment even though he was injured by the negligence of a third party; and that, in such a case, the employer was subrogated to the rights of the employee against such third person. It was also held in that case that,

if the employee settled with such third person, the employer was entitled to have the amount received by the employee applied *pro tanto* in payment of the compensation awarded by the compensation commissioner. The court further held in that case that a negligent third party could not, without the consent or concurrence of the employer by settlement with the injured employee, affect or preclude the right of recovery by the employer for damages sustained by the injured employee to the extent of the compensation awarded. In a very well-reasoned opinion, the Supreme Court of Nebraska said in that case:

"When the accident happened the employer became liable to the employe for compensation to be paid according to the provisions of the statute. The employer also was subrogated to the right to recover from the negligent third party the full amount of damages suffered by the injured workman. The amount which the employe was entitled to receive from the employer was in a large degree fixed by statute, but the amount which the employer might in turn recover from the wrongdoer is to be determined either by settlement satisfactory to the three parties concerned, or by the ordinary process of litigation in an action for damages. The wrongdoer must take notice of the rights of all, and cannot by a settlement with the injured party increase the burden of the innocent employer. The parties concerned are equal in the eye of the law, and the courts will not suffer one to profit at the expense of either of the others. To allow the workman to settle with the street railway company for an unfair or an inadequate sum would compel the employer to be mulcted to an additional extent; therefore, when the street railway company settled with the injured workman, it took the risk of having to pay additional damages to the employer if the settlement was not fair, adequate, and satisfactory. If such a settlement was satisfactory to it, the employer is entitled to deduct from the amount of compensation the money which the injured workman has already received by way of settlement. If, however, the settlement was inadequate or obtained by fraud or mistake, and the employer is compelled to pay a greater sum by way of compensation, the employer still has his remedy by proceeding against the street railway company for any damages suffered by the workman in excess of the amount paid by way of settlement." [Hugh Murphy Const. Co. v. Serck, 104 Neb. 398, 177 N. W. 747, 748.]

The Missouri subrogation statute, like the Nebraska statute, contains no provision that, where a third party is liable, the injured employee is required to elect between an action for damages against such third party and a claim for compensation against his employer.

It was held in McKenzie v. Missouri Stables, Inc., 225 Mo. App. 64, 34 S. W. (2d) 136, that, under the Missouri Compensation Law, the employer's liability for compensation is fixed and established where the death is by accident arising out of and in the course of the employ-

ment irrespective of the fact that the proximate cause of the injury or death of the employee may be the negligence of a third party.

In Benoit Coal Mining Co. v. Moore, 109 So. 878, the widow of a deceased employee brought suit against a railway company for damages for the death of her decedent, and settled the case for the sum of $1,000. Later, in making an award of compensation, the court deducted the sum mentioned from the amount of compensation payable to the dependents of the employee and rendered judgment for the balance. It was urged in that case that the employer had been deprived of the right of subrogation by such settlement; and that the claimant should not be permitted to further prosecute the claim for compensation. The Supreme Court of Alabama held that there was no deprivation or destruction of the right of subrogation; that the provisions of the statute had been followed; and that the contention was without merit.

Appellants herein are correct in asserting that the construction given to the statute by the Supreme Court of Nebraska, prior to the time said statute was adopted by this State, is no more than persuasive authority as to the true intent and meaning of the statute and should not prevail against the general policy of the laws and practice of Missouri, even though it be presumed that our Legislature, in adopting the Nebraska statute, did so in light of the construction given it by the highest court of that state. However, in the case at bar, we know of no law, rule, or practice in this State which runs contrary to the reasoning and holding of the Supreme Court of Nebraska in construing said statute. On the contrary, we are of the opinion that the construction given to the statute by the Supreme Court of Nebraska is clear and sound, and the only reasonable construction which can be given to its language.

We think it is clear that, under the statute, the moment the accident happened the employer became liable to the employee for compensation to be paid according to the provisions of the compensation law; and that the employer was from that moment subrogated to the right to recover from the negligent third party any amount which the employee would have been entitled to recover, subject, of course, to the rights and liabilities of all the parties being so determined in subsequent proper procedure for that purpose.

It seems clear that it was the purpose of the Legislature, in enacting the section under discussion, to state the rules to govern employers, employees, and third parties so that when, by proper procedure after an injury to an employee, the rights and liabilities of the various parties shall have been determined, the determination of such rights and liabilities shall relate back to the time of the accident giving rise thereto.

In the case at bar, the employer, not having been a party to the settlement between the employee and the third party, is not bound by

that settlement. He may still bring his action against the third party any time within the Statute of Limitations. Furthermore, the employer is not limited in his right of recovery to the $100 which the employee actually received from the third party in settlement, for the subrogation statute provides specifically that "The recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover." It will thus be seen that the statute, when properly construed, as it was in the Nebraska case, *supra*, which construction we are adopting herein, clearly prevents any unfairness to the employer by the employee making a settlement. The amount which the employee "would have been entitled to recover" remains to be determined if the employer is not satisfied with the settlement which the employee made with the third party. The third party is chargeable with notice of the employer's right to subrogation under the law, and when said party made the settlement, it took the risk of having to pay additional damages, if the settlement was made by fraud, accident, or mistake, or was not fair and adequate.

Appellants argue further that an affirmance of the award in this case would established precedent which would defeat the principle underlying the subrogation section of the compensation law, and assert that, in numerous cases, a small ready cash settlement would induce the employee to sell out not only his own interest against a negligent third party, which interest might be far in excess of the compensation payable, but thereby sell out his employer's right as well; and that such procedure would violate the principles of equity as well as the principles of the compensation law. We are unable to agree with appellants on this point. On the contrary, the construction of the statute contended for by appellants would, in our opinion, place an employer in a position where he could, by denying that the claim was a compensable one on the ground that it did not arise out of and in the course of employment, induce the employee to look to the third party for damages to compensate him for his injury; and if, to avoid litigation, the employee should make a settlement with the third party, and thereafter, as in the case at bar, avail himself of his right to file a claim for compensation against the employer and have his claim for compensation determined by the proper tribunal, he would find that he would be denied the compensation provided for him by the law because he had taken too seriously the employer's denial of the compensability of his injuries. Such construction would not only work an injustice to the employee but would defeat the obvious purpose of the Legislature in enacting the subrogation section of the compensation law. By the construction which we are giving the statute, no injustice is done to the employer or employee, or the third party, and the evident purpose of the Legislature will be carried into effect.

The judgment of the circuit court affirming the award of the compensation commission is, therefore, affirmed. *Hostetter, P. J.,* and *Becker, J.,* concur.