ETHEL OWENS, Plaintiff-Appellant, v. BRODIE OWENS, JOHN R. OWENS, M. C. OWENS, DELLER OWENS, ALETHA OWENS, GERALDINE OWENS, BETTY JOE OWENS, F. M. DILLARD, Trustee, H. E. DOERNER, Administrator of the Estate of D. L. OWENS, J. R. HUTCHISON, O. C. CLARK, F. L. OWENS, BOBBIE OWENS, CARMINE OWENS and ELMER PEAL, Trustee, Defendants, BRODIE OWENS ET AL., Respondents.—146 S. W. (2d) 569.

Division One, January 4, 1941.

*Ward & Reeves, Von Mayes* and *N. C. Hawkins* for appellant.

*Corbett & Peal* for respondents.

DALTON, C.—This is an action in equity to quiet and determine title to certain real estate in Pemiscot County and to recover dower therein. For convenience we shall refer to the parties as plaintiff and defendants.

Plaintiff is the widow of D. L. (Dallas) Owens, who died intestate in Pemiscot County, November 11, 1931, seized and possessed of said real estate, subject to certain liens. Plaintiff seeks (1) to set aside as fraudulent the foreclosure and sale of the real estate to defendant Brodie Owens under a certain deed of trust executed by her deceased husband to his father; (2) to avoid a deed of trust, executed by Brodie Owens after the foreclosure sale, on the ground that the beneficiaries in the deed of trust took with knowledge of plaintiff's claim; (3) to recover dower in the real estate free and clear of debts and liens and (4) to secure an accounting for her share of the rents and profits.

Defendants are (1) the three minor children of D. L. Owens, deceased, to-wit: Aletha, Geraldine and Betty Joe Owens, who were duly represented by a guardian *ad litem*; (2) deceased's father, M. C. Owens, the beneficiary in the deed of trust that was foreclosed; (3)

deceased's mother, Deller Owens; (4) deceased's brothers, Brodie Owens (record title holder), John R. Owens, and F. L. Owens; (5) the wives of Brodie Owens and John R. Owens; (6) the administrator of the estate of D. L. Owens, deceased; (7) the trustee and payees in the deed of trust executed subsequent to the foreclosure sale; and (8) F. M. Dillard, Trustee.

The court found that plaintiff had no right, title or interest in the described real estate; that defendant Brodie Owens was the fee simple owner thereof, subject to the lien of the last deed of trust; that Bobbie Owens, wife of Brodie Owens, had an inchoate right of dower in the property; and that the defendants, other than Brodie Owens and wife and the trustee and beneficiaries in the last deed of trust, had no right, title or interest in the real estate. Only plaintiff appealed.

No question is raised as to the pleadings. There is no dispute as to the relationship of the parties, as above indicated. It further appears that this suit is one of a series of lawsuits in which the parties or some of them have been interested. [See Dillard v. Owens (Mo. App.), 122 S. W. (2d) 76; Owens' Estate v. Owens (Mo. App.), 107 S. W. (2d) 150; Sanders v. Owens (Mo. App.), 47 S. W. (2d) 132; Sanders v. Owens (Mo. App.), 40 S. W. (2d) 738.] Other litigation is mentioned which did not reach the appellate courts.

The real estate was acquired by D. L. Owens from Willie Capps, November 15, 1929. The deed recites a consideration of $2894. On November 29, 1929, D. L. Owens and Ethel Owens (plaintiff) executed a deed of trust in favor of Willie Capps as trustee for Roberta Bussert to secure two notes of D. L. Owens to Roberta Bussert for $697 each. On May 3, 1930, D. L. Owens executed a deed of trust to the acting sheriff of Pemiscot County, as trustee for M. C. Owens, to secure a note to M. C. Owens for $1500, payable December 31, 1930. The note and the deed of trust show Ethel Owens as a co-maker.

On September 3, 1932, the deed of trust of May 3, 1930 was foreclosed and the property sold to Brodie Owens. A trustee's deed, reciting a consideration of $30, was duly executed and delivered to Brodie Owens pursuant to the foreclosure sale. Thereafter, date not shown, Brodie Owens executed a deed of trust on said property to Elmer Peal, trustee for J. R. Hutchison and O. C. Clark to hold them harmless for having signed a certain appeal bond for Brodie Owens.

Although plaintiff's petition mentioned the deed of trust from D. L. Owens to M. C. Owens, dated May 3, 1930, she did not allege that it was a forgery or that she had not signed it. She alleged that the deed of trust was not a valid and subsisting lien on the land at the time of her husband's death; and that it was given by her deceased husband to protect "M. C. Owens against the payment of certain debts as surety, which debts were fully paid without loss to said M. C. Owens."

The answer of the adult defendants denied that plaintiff was the owner of a dower interest in the real estate free from debts, and alleged that "long prior to the death of D. L. Owens, that D. L. Owens and Ethel Owens . . . had made, executed and delivered a deed of trust on the aforesaid lands, to a trustee, for defendant, M. C. Owens, to secure a note signed by both D. L. Owens and the said Ethel Owens, in the sum of $1500 and  . . . that said deed of trust was a valid and subsisting . . . lien on said land at the time of the death of the said D. L. Owens." Defendants further alleged that no part of the debt evidenced by the note had been paid; that the deed of trust was duly foreclosed and the premises sold to Brodie Owens; and that plaintiff's dower interest in the real estate was extinguished.

Plaintiff filed no reply to this answer, and defendants raised no question as to the application of Sec. 965, R. S. 1929, 2 Mo. Stat. Ann. 1235. Both parties offered evidence on the issue as to the execution by plaintiff of the note and deed of trust of May 3, 1930.

Plaintiff testified that she did not know anything about the deed of trust of May 3, 1930 to M. C. Owens, until after her husband's death, and that she did not sign it. When plaintiff's attention was called to her signature on the Bussert deed of trust, she admitted it looked like her signature, but denied that she had signed the deed of trust. Later when her attention was again called to the fact that the instrument was the Bussert deed of trust, she admitted that she had signed and acknowledged it. When shown the signatures on the deed of trust to M. C. Owens, she testified: "That looks like the other deed of trust, but I never signed it to Mr. Owens." She further denied that she had acknowledged it, or had signed the $1500 note secured by the deed of trust. She then testified (apparently referring to her husband) "When he fixed that up—that was right after Mr. Sanders had run an attachment on the farm and he was in the hospital in St. Louis and we brought him back from St. Louis— when we got back from out west he fixed this up. I don't know anything about it whatever—I certainly did not."

Defendants' witness Ferguson, a banker and former circuit clerk, familiar with the signatures of different people, testified that he didn't think the same party signed the name "Ethel Owens" on the deed of trust of May 3, 1930 and on the deed of trust of November 29, 1929, but that the signature "Ethel Owens" on the note and deed of trust of May 3, 1930 were the same. He said the signature "Ethel Owens" on Exhibit 3 (admitted by plaintiff, date not shown), and the signature "Ethel Owens" on the deed of trust of November 29, 1929, were not the same, or that plaintiff had changed her writing between the time she signed the deed of trust and the time she wrote her admitted signature in court.

Mrs. Deller Owens testified that the signature "Ethel Owens" on the two deeds of trust and on the $1500 note were the same and were plaintiff's signatures. Witness claimed she knew plaintiff's handwriting and was acquainted with her signature and had seen it "lots of times." M. C. Owens testified that the signature "Ethel Owens" on the two deeds of trust was plaintiff's signature and that he had seen her "handwriting plenty of times."

R. L. Weaver, the notary public who took the acknowledgment to the deed of trust of May 3, 1930, testified that plaintiff signed the deed of trust in his presence; that the $1500 note was signed by plaintiff in his presence on the same occasion; that he had an independent recollection of having taken the acknowledgment to the signatures and of going down to Mr. Owens' house on that occasion, but he could not remember the date or year.

On this issue the court found: "That said note and deed of trust was a valid, binding and subsisting obligation as between the said D. L. Owens, the plaintiff, Ethel Owens, and said M. C. Owens, as well as the acting sheriff of Pemiscot County, Missouri, named as Trustee therein, and that said note and deed of trust were given by said D. L. Owens, and Ethel Owens to the said M. C. Owens to secure M. C. Owens, the father of D. L. Owens, for debts which the said D. L. Owen was then owing to the said M. C. Owens, and for notes and obligations which the said M. C. Owens has signed as surety for said D. L. Owens, and the further obligations wherein the said M. C. Owens had loaned the said D. L. Owens his credit."

Plaintiff was one of the plaintiffs in the case of Dillard v. Owens (Mo. App.), 122 S. W. (2d) 76. The record shows that F. M. Dillard, trustee for Aletha Owens, Geraldine Owens and Betty Joe Owens, and their mother Ethel Owens, individually and as natural guardian and next friend of the children, were plaintiffs, and Deller Owens, M. C. Owens and Brodie Owens were defendants. That was a suit in equity to trace trust funds into certain real estate and to have the real estate impressed with a lien for the amount of the funds invested therein. Tract 3 in that suit is the real estate involved here. The decree was for plaintiffs, the real estate was impressed with a lien and the judgment subsequently paid and the lien discharged. Plaintiff now seeks to recover dower in the land itself, to-wit, tract 3. She seeks to make out her case upon the basis of defendants' theory, pleadings and testimony in the former case which they lost. Plaintiff offered in evidence the pleadings of the defendants, the decree of the court and the testimony of M. C. Owens in that case. The final opinion on appeal is also incorporated by reference in appellant's abstract of the record. Plaintiff further relies upon the testimony of M. C. Owens and Deller Owens in the trial of this cause. She insists that the issues on this appeal are solely between Brodie Owens and herself and that she is entitled to recover on the evidence

furnished by defendants themselves. Defendants not only contend that plaintiff's dower rights were cut off by the foreclosure of the deed of trust, but that the proceeding in the cause of Dillard v. Owens, supra, bars plaintiff's recovery herein. Why plaintiff was individually a party to that suit does not appear from the record.

The trust funds, referred to above, arose as follows: D. L. Owens had two policies of life insurance payable to his estate for a total of $7,000. Shortly prior to his death, D. L. Owens named his mother, Deller Owens, as beneficiary in each policy of insurance and upon his death she collected a total of $6,695 on said policies. Her position with reference to said funds is disclosed by her answer in the prior suit. She alleged: ''That the said D. L. Owens, realizing that if the proceeds of said insurance policies were paid to his estate, his creditors would get or receive the major part of said insurance money, and that to prevent such disposition of said insurance money, he . . . made this defendant, his mother, the beneficiary in said insurance, with the agreement and understanding that she would use the same to the best advantage, and that same would not be squandered or wasted, and to use the same as she might think best and with the specific command and request to her that out of the said insurance funds she should first pay M. C. Owens, the father of said D. L. Owens, the moneys, he, the said D. L. Owens, owed his said father, and notes in which his said father was security for him, the said D. L. Owens, and certain obligations which he, the said M. C. Owens, had borrowed money in his own name for the said D. L. Owens, and which the said D. L. Owens had received and used for his own benefit, and to redeem the third tract of land described in plaintiff's amended petition, in such a way that his creditors could not get the same after redemption.''

The answers of Brodie Owens and M. C. Owens in the prior suit were similar to the answer of Deller Owens, supra. In addition the answer of M. C. Owens alleged that, when the beneficiaries in the insurance policies were changed to Deller Owens, ''D. L. Owens was hopelessly insolvent and was indebted to a number of creditors including this defendants, . . . and that the purchase of said land by the said Brodie Owens under said second deed of trust, and the redemption of the same by the said Deller Owens was strictly in accordance with the instructions and request of said D. L. Owens . . . with reference to said funds.''

Deller Owens' position was and still is that all of the money she received as beneficiary from said insurance policies was expended by her in accordance with the desire and request of D. L. Owens. She presented a detailed account showing the manner in which she had disposed of said entire fund, and an additional sum of $154.49, all being applied to the payment of certain alleged indebtedness of D. L. Owens. On some of this indebtedness the said M. C. Owens was a

surety. The account does not purport to show any payment to M. C. Owens on the $1500 note in question nor on any indebtedness of D. L. Owens to M. C. Owens on account of security debts paid by M. C. Owens for D. L. Owens prior to the collection of the insurance money.

The trial court in the former case found against the defendants on their evidence in support of the above contentions and found in favor of plaintiffs. The finding was affirmed on appeal. The decree purported to trace the disposition of said insurance trust funds, and held that $1296 had been invested in tract 1 and $2379.94 in tract 3 (the latter in litigation here); and that $1573.96 of trust funds was expended in paying off the deed of trust to Roberta Bussert and $805.96 in paying off taxes. The land was impressed with a lien in favor of F. M. Dillard as trustee, for said amounts, and the land ordered to be sold. Both parties here concede that the liens impressed on said real estate have now been discharged, and plaintiff seeks to take advantage of that fact on this appeal.

The record further shows that prior to the institution of the suit of Dillard v. Owens, supra, that Ethel Owens as next friend of Aletha Owens, Geraldine Owens and Betty Joe, as plaintiffs, had obtained a judgment against defendant Deller Owens to the effect that the money collected by Deller Owens on the insurance policies of D. L. Owens to-wit, $6695, was a trust fund for the use and benefit of the minor plaintiffs for their support, maintenance and education, and that Deller Owens was a trustee of said fund for them and had no right, title or interest therein except as trustee for said minors.

Thereafter, Ethel Owens as next friend of Aletha Owens, Geraldine Owens and Betty Joe Owens, minors, recovered a judgment against Deller Owens removing Deller Owens as trustee of said insurance funds, finding that Deller Owens had used and expended a large part of the funds for her own use and benefit and for the benefit of her husband in the protection of their property and in violation of the trusteeship, and requiring Deller Owens to account for the trust funds in the sum of $6695. The record further shows that Deller Owens filed an account showing the disposition of said funds, as hereinbefore set out; that the court disallowed the account, except as to $342.74 spent for clothing for the minors and for insurance and taxes on the minors' homestead, and entered a final judgment against Deller Owens for $6352.26. She being insolvent, the suit of Dillard v. Owens, supra, followed. Thereafter, the present suit was instituted.

Plaintiff, on her own behalf, testified that she had received no rentals from the said real estate after her husband's death; and that dower had not been set off to her. She explained her delay (until August 14, 1937) in instituting this suit, on the ground that she did not understand the situation until she heard the testimony of M. C. Owens in a former suit to which both were parties. She then

testified as to the testimony given by M. C. Owens in the former case (his testimony, however, is hereinafter set out) and she further said that Brodie Owens and his mother Deller Owens heard the testimony of M. C. Owens and did not deny it.

We shall not separate the testimony of M. C. Owens in the prior case, offered in evidence here by plaintiff, from the testimony of M. C. Owens on behalf of defendants in this case. Plaintiff concedes that there is no conflict. M. C. Owens testified that he was over seventy years of age; that his son D. L. Owens, at the time of his death, was indebted to him "a right smart;" that he really didn't know how much, but something over $2200; that he was on his son's paper to the Bank of Caruthersville for $1800, and to Sanders for $600 (Sanders v. Owens, supra,); that both of these debts were paid off out of the insurance money; that the insurance was made payable to Deller Owens for that purpose; that his son D. L. Owens "figured it up" and gave him the $1500 note and deed of trust as security for the money owed. He further said: "Part of it was to secure me for what I was bound for him. I hadn't paid it all at the time, paid it afterwards out of my own money." Witness further said that his son wanted to make him safe so that he would not lose anything; that "lawsuits were threatening;" that he didn't know how much he (witness) had paid out prior to receiving the note; that, considering what his son owed him at the time and what had been paid off since the note was given, the amount was $2200; that the deed of trust was given to prevent anyone except witness from getting the land; that, at that time, he (witness) was bound for lumber that went into the house and barn on this land; that he had given a note for it before the $1500 deed of trust was given; that he paid for this lumber afterwards by a $523.34 check dated November 7, 1930, which check he presented; that he had paid off other debts before and since the $1500 note was given; that he "wasn't caring anything about" his son's indebtedness to him; that he was just helping his boy and had helped them all; that the note and deed of trust was all the security his son could give, as the land wasn't worth any more; that his son gave the note for all he thought the land would pay out; that he (witness) later found out the land wasn't worth what was against it; that the Bussert deed of trust "was mighty near as much as the land was worth at the time;" that he didn't remember getting all of the $1500 back at any time; that if he had he would have known it; that he did not get the land back himself; that he did not consider the note paid off; that in paying security debts for his son he had put a $1200 mortgage on his own place; that his wife had paid this $1200 mortgage off out of the insurance money; that his payment was supposed to be a part payment of this $1500 note, but it had not been credited. A lien was secured against tract 1, in the former suit, supra, covering this payment by Deller Owens out of the trust funds.

With reference to the foreclosure of the deed of trust he testified: "I let this land sell for $30.00 and put it up and sold it so we could place this insurance money in this land for the benefit of Dallas' wife and children. We wasn't doing that to let Brodie on the land, he didn't want it, but *I was aiming to fix it* so these children would get it and get the benefit of the money. . . . Sure, that was Brodie's understanding and my wife's understanding too. Yes, we all three talked it over . . . before the land was sold and Brodie bought it. Yes, it was the understanding when he bought it, it was to be handled that way *and it would have been handled that way long ago if they had let us alone.*" (Italics ours.)

He further testified that he attended the foreclosure sale with his son Brodie Owens; that he told Brodie to buy the land in; that Brodie said all right and bid on it; that someone else bid $25, but Brodie bought the land for $30; that he didn't remember who furnished the money; that he told Brodie he didn't want to be bothered with it; that he did pay some of the taxes after Brodie bought it; and that his wife paid off the first deed of trust and the $800 taxes out of the insurance money.

M. C. Owens further testified that after Brodie bought the land at foreclosure he (witness) was willing to lose everything else that was owed to him; that he was willing to give the property to the widow and children and offered to do that in settlement of the former suit; that settlement was refused; that Brodie was willing to make the deed, as he had taken title with the understanding it came to the children when they grew up; that he let Brodie take title because he was young and could look after the property and could see that the children got what was due them; that the property was bid in for that purpose; that it was bid in to get it where they could handle it and the other creditors could not get it; that he didn't foreclose the property to get his money out of it; that he didn't get his money out of it; that it was foreclosed to get title so they could handle the property; that he had the $1500 note at the time of the foreclosure and had had it since (it was in evidence); that he had the property foreclosed so that his wife could use the insurance money to pay off the taxes and have the money secure so that the widow and children could get it later in accordance with what Dallas had said; that the widow and children were to get the benefit as "they" had expected to take care of them out of the insurance money, but that there was no agreement to give them his $1500. He admitted that he had filed no claim against his deceased son's estate; that he didn't keep any books; and that at one time he had expected his son to pay him back but not after his son got sick.

Deller Owens admitted the collection of the insurance money, and its use in paying off the Bussert deed of trust and the taxes on this land. She claimed she had offered to deed this land to plaintiff and

the three children in settlement of the prior case but the settlement was refused. She said that Brodie Owens had rented the farm to John R. Owens; that she was collecting rents and paying taxes; that Brodie Owens owned the property; that she and her husband had no interest in it; that they had only collected $11 net on the $1500 note from the foreclosure sale, since the publication cost $19; that the purpose of the foreclosure sale was to get title out of the D. L. Owens estate in order to pay off the deed of trust and taxes and carry out the wishes of D. L. Owens; and that taxes were pressing at the time of the foreclosure. Brodie Owens although present in the court room did not testify.

In an equity suit we are not bound by the findings of the trial court, but will review the evidence and reach our own conclusions. Where, however, there is a conflict of verbal testimony involving the credibility of witnesses, we usually defer to the trial court's findings, unless satisfied that they are against the weight of the evidence. [Conrad v. Diehl, 344 Mo. 811, 129 S. W. (2d) 870, 876.] On the issue as to whether or not plaintiff executed the note and deed of trust of May 3, 1930, in view of the evidence, we defer to the trial court's finding and hold that plaintiff duly executed the note and deed of trust.

Plaintiff contends that upon defendants' undisputed evidence the deed of trust was fraudulently given; that the foreclosure was fraudulent and a nullity; and that Brodie Owens has no right, title or interest in his own right and is a "straw man" or constructive trustee for others. Plaintiff's contention that the deed of trust was fraudulently given, in part, is based on defendants' pleadings in the prior case and upon the testimony of M. C. Owens to the effect that his son was insolvent and the deed of trust was executed to secure the father and prevent the other creditors from getting the farm.

A debtor has the right to prefer one creditor to another and to transfer his property to secure a *bona fide* debt of one creditor to the exclusion of all other creditors. Such a transfer will be upheld even though the preferred creditor knows of the debtor's insolvency and that the effect of the transfer will be to hinder, delay and defeat other creditors. [Shelley v. Boothe, 73 Mo. 74; Crothers v. Busch, 153 Mo. 606, 610, 55 S. W. 149; 27 C. J. 627, sec. 386. See also, Bank v. Fry, 216 Mo. 24, 34, 115 S. W. 439; Gust v. Hoppe, 201 Mo. 293, 300, 100 S. W. 34.] The mere fact that the preferred creditor was the father of the debtor did not render the transaction invalid. [Brennecke v. Riemann (Mo.), 102 S. W. (2d) 874, 877; Graveman v. Huncker, 345 Mo. 1207, 139 S. W. (2d) 494, 499.]

Plaintiff further contends the note was fraudulently given, without consideration and as a part of the plan for the disposition of the insurance funds. There was no evidence that the note and deed of trust were given for any purpose connected with the insurance

funds. The note and deed of trust were executed May 3, 1930, while the alleged arrangements for the use of the insurance funds to redeem the property from this note and deed of trust, were not made until about February 19, 1931, when D. L. Owens named his mother beneficiary in his life insurance policies. Plaintiff's petition conceded that the note and deed of trust were given to protect M. C. Owens against the payment of certain debts as surety for D. L. Owens. Defendants' evidence tended to show that the note was given for indebtedness due M. C. Owens and to protect M. C. Owens on obligations where he had extended his own credit for D. L. Owens, and which obligations he later paid, and to protect him against loss on notes which he had signed as security for D. L. Owens. He estimated the first two items at $2200 prior to D. L. Owens' death. We think no adverse inferences should be drawn against M. C. Owens because, some seven or eight years after the transaction, he could not recall how much he had paid out before the note was given and how much was paid out after the note was given on obligations which existed at the time the note was executed and delivered. The note was in evidence. Prima facie the note was executed for a value consideration and plaintiff became a party thereto for value. [Sec. 2653, R. S. 1929, Mo. Stat. Ann., p. 656.] The note, in possession of the payee at the time of the trial, was prima facie evidence that it had not been paid. [Bush v. Brandecker, 123 Mo. App. 470, 474, 100 S. W. 48; Courtney's Estate v. Lanznar's Estate (Mo. App.), 296 S. W. 269, 272.] The burden of proof rested upon plaintiff to establish the several contentions made by her in argument, to-wit, that the note was fraudulently given; that it was without consideration; that the obligations which it was to secure had been paid; and that the note was forgiven. There is no evidence of payment to M. C. Owens on any indebtedness evidenced by this note and no showing that the indebtedness was forgiven. Although M. C. Owens testified that the $1296 payment, made by Deller Owens on the mortgage on the home place was made out of the insurance money, and was intended to be a payment on this note, it was not credited on the note, and in the meantime plaintiff became a party to a suit against M. C. Owens, in which suit the $1296 so paid on said farm was declared to be a lien thereon, and M. C. Owens paid off and discharged this lien to prevent the sale of the premises. Under such circumstances it could not be said that the note was paid or that plaintiff was entitled to have said sum credited thereon. From the evidence we find that the said $1500 note was a valid subsisting obligation secured by a deed of trust upon said real estate and that the note was due and unpaid at the time of the foreclosure sale.

In the trial of the former case defendants' attorney offered to show that at the time the name of the beneficiary was changed in the insurance policies (long after the note and deed of trust were

given) that D. L. Owens instructed his mother, in connection with the disposition of the insurance money, not to retain this real estate in his name after it had been redeemed from the two deeds of trust and from taxes, or else his creditors would get it. The offer was refused. Plaintiff seeks to make much of this as an admission by defendants that the deed of trust was given for a fraudulent purpose and that it was foreclosed for a fraudulent purpose. This contention is not supported by the evidence. In addition the property was not redeemed from the second deed of trust and M. C. Owens was not paid anything out of the insurance funds.

Plaintiff's argument that the foreclosure was fraudulent and a nullity is based upon admissions in the testimony with reference to the foreclosure being had for the purpose of getting the property out of the estate of D. L. Owens in order to have it in shape where title could be handled and the insurance funds could be invested in it, and the insurance funds preserved for the widow and children. Plaintiff insists that M. C. Owens took title in the name of Brodie Owens for the benefit of herself and the children; that Brodie Owens had full knowledge of all facts and was a party to the agreement; that the real purpose was to deprive her of dower but that her dower was not extinguished. If the note and deed of trust was a valid subsisting obligation in the hands of M. C. Owens, as we have seen that it was, and if he intended to foreclose the deed of trust and take title out of the former owner, it is immaterial what motive, intention or purpose influenced him to bring about the foreclosure or what intent and purpose he had in mind to accomplish thereby. "One cannot be guilty of fraud by doing what he has a legal right to do. A court does not inquire into ones motives for doing a lawful act." [State ex rel. Union Trust Company v. Buder, 308 Mo. 237, 252, 271 S. W. 508, 39 A. L. R. 1199.] Plaintiff had relinquished her dower as provided in Sec. 3015, R. S. Mo. 1929, Mo. Stat. Ann. 1863, to secure the note to M. C. Owens. The foreclosure extinguished her dower. [Sec. 3075, R. S. 1929, Mo. Stat. Ann., p. 1900.] She now has no dower under Sec. 318, R. S. 1929, Mo. Stat. Ann., p. 202, to be recovered under Sec. 339, R. S. 1929, Mo. Stat. Ann., p. 226.

Neither Brodie Owens, M. C. Owens nor Deller Owens are now bound to carry out their former intention and purpose with reference to said real estate. It clearly appears from the evidence that all of defendants' plans and expectations were contingent and conditional upon their theory and understanding with reference to the right of Deller Owens to invest the insurance funds in said real estate by paying off liens and redeeming the land. By reason of the institution of the several suits by plaintiff on behalf of herself and her children, and her recovery therein, defendants' purpose failed. The money was recovered from the defendants and taken out of the land. The original purpose of defendants no longer obtains. In ad-

dition the bringing of the prior suit of Dillard et al. v. Owens et al., supra, and plaintiff's participation therein, was in effect an election to take the trust funds as money and to repudiate defendants' action in investing the money in this land. It was a rejection of defendants' plans and purposes. Plaintiff by joining in the bringing of that suit in effect ratified and confirmed the foreclosure sale and obtained relief upon the theory that legal title to the real estate was in Brodie Owens. [See Dillard v. Owens, supra, 122 S. W. (2d) 76, 83.] A lien was impressed upon the land for the amount of the trust funds on the theory that title was not in the estate of D. L. Owens. The judgment has been paid and the lien discharged. Having been a party to the proceedings for reclaiming the trust funds out of the land, plaintiff may not now claim dower in the land itself. [Tower v. Compton Hill Improvement Co., 192 Mo. 379, 393, 91 S. W. 104; Bell v. Butte Inv. Co. (Mo.), 250 S. W. 381, 383.]

Plaintiff further insists that she didn't lose her dower unless she lost it to Brodie Owens; that Brodie Owens only paid $30 "for the trustee's deed and land;" that "$30.00 was all the land cost him;" that the land was worth $40 per acre then and $75 per acre now; that the rents have increased from $5 or $6 per acre to $10 to $12 per acre; that Deller Owens paid off the first deed of trust and all of the taxes with the insurance money; that Brodie Owens didn't refund this money; that M. C. Owens paid off the judgment liens; and that Brodie Owens is not an assignee or beneficiary of M. C. Owens and cannot claim the benefit of said payments. If plaintiff is to recover in this case she must recover on the strength of her own title and not on the weakness of the title of her adversary. [Cullen v. Johnson, 325 Mo. 253, 271, 29 S. W. (2d) 39.] If plaintiff has no dower interest in the described real estate it is of no concern to her who the true owner is or whether Brodie Owens' title is good as against the other defendants. [Cullen v. Johnson, supra.] The burden of proof was upon plaintiff to make out her case and establish the interest which she claimed in the real estate. [White v. Kentling, 345 Mo. 526, 134 S. W. (2d) 39.] This she has failed to do. The evidence disclosed no equities in plaintiff's favor.

The judgment is affirmed. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.