256 S.W.2d 812 (1953)
CROSS
v.
GIMLIN et al.
No. 42612.
Supreme Court of Missouri, Division No. 1.
March 9, 1953.
Motion for Rehearing or to Transfer to Denied April 13, 1953.
Robert M. Zeppenfeld, St. Louis, for Albert S. Gimlin, appellant.
Flynn & Parker, Francis C. Flynn, Norman C. Parker, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied April 13, 1953.
HYDE, Presiding Judge.
Action for one-half of profits under an agreement, alleged to have been made July 16, 1925, for building and selling two and four family flats. Plaintiff had judgment for $4,750 with 6% interest from September 1, 1926, and defendant has appealed. Since the total amount in dispute exceeds $7,500, we have jurisdiction. See Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054; Union Nat. Bank of Wichita, Kan. v. Lamb, 358 Mo. 65, 213 S.W.2d 416.
The case was tried by the court without a jury and sole issue here is whether the evidence is sufficient to support the judgment. Plaintiff cites Section 510.310 RSMo 1949, V.A.M.S. and Middleton v. Reece, Mo.Sup., 236 S.W.2d 335, saying the judgment should not be set aside unless clearly erroneous and that we should defer to the trial court's findings when the case turns upon the credibility, weight and value of the oral testimony of witnesses who have appeared personally before him. However, the cited section also says: "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature." As we recently said concerning such review: "`The question for our determination is therefore not merely one of whether the court's finding was supported by substantial evidence. On the contrary, it is our duty to make our own independent finding of the facts and reach our own conclusion as to where the weight of the evidence lies. Whatever findings the lower court may have made are in no sense binding upon us, although in matters where the evidence is conflicting and close we shall have due regard for the lower court's opportunity to judge the credibility of the witnesses.' Redden v. *813 Boehmer, Mo.App., 223 S.W.2d 127." Faire v. Burke, Mo.Sup., 252 S.W.2d 289, 290.
After submission here, we adopted an opinion affirming the judgment but thereafter granted a rehearing. We have now come to the conclusion on the whole record that plaintiff's evidence (which was his own testimony only) was too indefinite and uncertain to support the judgment. The parties completed four flats in 1926 and all were sold by February 1927. They never agreed upon the financial result of their operations but this suit was not begun until May 1931. Plaintiff's investigation as to costs, upon which his testimony at the trial was based, was only begun after his deposition was taken in 1946. No excuse is made for the long delay in this case and such pendency of litigation should not be tolerated. It should be noted, however, that plaintiff's present attorneys have recently come into the case.
Both parties testified that the four flats were sold for the total amount of $76,000. Plaintiff's petition alleged "that the costs of construction, labor and materials, value of the lots, plans, interest, commissions and all proper charges totalled the sum of $65,000.00", but plaintiff's estimate at the trial was $58,000. (The trial court found the total cost to be $66,500.) The first point of disagreement is the terms of the contract between the parties. Plaintiff said he was to supervise the construction, obtaining the labor and material, and defendant was to finance the job; neither party was to be paid any salary but were to split the profits. A written contract was prepared by defendant, dated July 16, 1925. Plaintiff said the work started the first part of July and that defendant brought out the contract "a few days after we started to work." It provided that "in the event loans are made to carry on the erection and completion of buildings each party hereto will pay interest, commission, and other expenses in connection with loan, share and share alike." Plaintiff said he would not sign the contract because of this provision. The contract also provided the parties were forming a partnership, "each sharing one-half the profits and losses." Plaintiff said they also talked about incorporating and he agreed to do so with defendant and his wife, but defendant did not want his wife in it. The work went on without any such arrangements or the execution of a contract in writing. The trial court found there was no partnership but did not make a specific finding as to the terms of the agreement between the parties, except that plaintiff was to receive one-half of the profits.
The lots were conveyed to defendant and his wife, and it is conceded that defendant paid the purchase price. Plaintiff said defendant told him the price was $50 per front foot or $7,950. Defendant claims it was $9,950 because the corner lot cost $100 per front foot and the rest $50. The method of operation was that plaintiff ordered the material and turned the bills over to defendant for payment. Plaintiff did not keep any record of the amount of these bills and did not know what they were. Plaintiff kept the labor pay roll books and made a duplicate copy for defendant every Saturday morning. Defendant would go to the bank and get the pay roll money. Plaintiff said he still had these labor pay rolls at home but did not produce them at the trial. He was asked if he recalled "what the cost of labor was on these four houses" and said: "I think it was around $8500.00 or $8600.00." Defendant's objection was sustained as to his supposition, on the ground that these records were the best evidence; and nothing further was offered as to labor costs. Therefore, there was no competent evidence in the record as to labor costs.
Plaintiff did testify as follows:
"Q. What, to the best of your recollection, was the cost, total cost, of construction of each one of these houses ? A. Well, as near as I can come to it, it was $14,000.00, around $14,000.00.
"Q. For each house? A. For each four-family flat. * * *
"Q. How much did the two-family flat cost? A. Approximately $8,000.00." (With the land, he estimated the total cost at about $58,000.)
However, he said the corner flat was a little better built "it's made of brick all around and the others wasn't, only made of brick on the front, and it's a stone foundation *814 instead of a concrete foundation." Apparently he did not consider that in his cost estimates.
On cross-examination, plaintiff could not give the figures on the various items such as brick, lumber, millwork, heating and plumbing, plastering, roofing, tile and stonework. He could not remember whom he dealt with for some of these items. He further testified:
"Q. Well, you haven't any definite figures then by which you can arrive at the actual cost of this venture and amount of money expended in connection with it? A. I haven't anything definite. * * * I arrived at the figure on the cost of the building from other jobs that I built. * * I got through telling you how I arrived at the 14,000. I told you I didn't have anything accurate. * * *" (Each flat had a separate brick garage.)
"Q. And do you know what those four-car garages cost to build? A. They went inthe labor went in with the other work.
"Q. They went in with them but I mean do you know about what they cost ? Material and labor? A. No; they wasn't figuredthe labor wasn't figured separately. * * *
"Q. I am asking you; can you figure what they would cost? A. I would have to count the brick and measure up the size of them. * * *
"Q. They were 40 by 22. A. I am not in a position to say now what they would cost."
Plaintiff explained his estimates further, as follows:
"Q. How did you arrive at that cost, of each one of these buildings, and when did you arrive at it? A. I think that was in `46, if I remember right, when they demanded that I turn in the figure what it cost to put up the buildings and I went over and measured the buildings; didn't have any drawings for them. I measured the buildings, and I went to figuring, I counted the windows, the doors, and all of that, and I called my material company, the lumber company, the mill company, the cement company and all the different ones, trying to get the price of material at that time and I couldn't get it, they didn't have it, and they couldn't remember; they told me approximately what it was. Well, the houses I built during that time and in `27, * * * I had those records; I kept the exact record of that * * * I figured off of that, is where I got my figures; figured up the quantity of material I needed and figured the quantity off of that price that I paid back then which was awful close to it, as close as I could get. The material companies had no records back that far. * * I went everywheres. I worked at least two months trying to get those figures together. * * * I run the record on the material and figured the same price that I paid in `27, which is awful near to what I paid in `26. Prices didn't change very much then. The big jump come in `28, the latter part of `28."
Plaintiff prepared a list, which he used at the trial, showing his lump sum estimates of the various items of cost. However, only three of these (hardwood floors, plastering and roofing asphalt) state the measurements and prices used. This list, without the price of the lots, totalled only $38,983.94 but did not include labor cost. It is apparent that the trial judge did not accept plaintiff's total estimates of $58,000 because he added $8,500 to them to reach his figure of $66,500. Plaintiff's long delay in even making estimates adversely affects confidence in them. Defendant testified that he borrowed a total of $65,500 on the flats (first mortgages of $11,000 and second mortgages of $7,000 on each of the three larger buildings and a first of $8,000 and a second of $3,500 on the smaller one) all of which went into the cost of construction. If this is true and there is added the price of the lots (at defendant's figure of $9,950), together with taxes and real estate commissions for sale of the flats, no profits would have been realized, regardless of interest and commissions on the mortgage loans. We recognize that defendant's testimony is no more definite or satisfactory than that of plaintiff, as neither produced records. (Defendant claimed his records were lost in a cyclone that destroyed his house.) Furthermore, neither party produced records *815 that were available, such as the public records of the Recorder's office. Nevertheless, plaintiff had the burden of proof and it is our view that the evidence leaves in the realm of speculation and conjecture the matter of costs and whether or not there were any profits. On the whole record, we cannot find a reasonable basis for determination that there were profits from this venture.
The judgment is reversed.
All concur.