John P. HARGAS, Respondent,

v.

Sherman L. TIPSWORD, Appellant.

No. 47559.

Supreme Court of Missouri,

Division No. 1.

April 11, 1960.

Motion for Rehearing or to Transfer to
Court en Banc Denied May 9, 1960.

Bernard A. Barken, St. Louis, for plaintiff-respondent.

Joseph Nessenfeld, Harry N. Soffer, St. Louis, for defendant-appellant.

COIL, Commissioner.

John Hargas, present respondent and plaintiff below, and Sherman L. Tipsword, present appellant, defendant and counter-claimant below, engaged in the used car business as partners at 4162 Natural Bridge in St. Louis under the name of "Tippy's Auto Sales" from January 1952 until some

time in 1953. After their partnership ter-i minated by mutual consent Hargas brought this action claiming Tipsword was indebted to him on account of the partnership operation and asking for an accounting to determine the amount. Tipsword's counterclaim denied the alleged indebtedness and sought to recover money which he claimed Hargas owed him. The trial court found for plaintiff on his claim and against defendant on his counterclaim.

There is no dispute as to the terms and provisions of the oral partnership agreement. It is sufficient for present purposes to say that Tipsword owned the lot on which the business was to be conducted and that the partners agreed to begin business with approximately $20,000 of which Tipsword was to contribute 60 and Hargas 40 per cent. Tipsword contributed the entire original capital of $20,357.96 and, although the partnership books indicated that Hargas had contributed 40 per cent or $8,143.18, he did not in fact originally contribute that amount. He contends that under their agreement he was to pay the $8,143.18 direct to Tipsword in cash when Tipsword requested it and he testified that he did so during 1952. Tipsword denied that Hargas paid him that amount or any part thereof at any time. Whether that amount was paid by Hargas to Tipsword is the only present dispute in so far as concerns Hargas's claim.

The parties concede that their agreement further provided that the rent on the lot was to be $400 and that Hargas was to pay owner Tipsword 40 per cent thereof, $160, each month. The rent item was not and was not supposed to be reflected on the partnership books. Further, it is undisputed that Hargas was to pay Tipsword 40 per cent of $4,000, a matter to which we shall later refer. Hargas claims that he paid Tipsword $160 in cash each month as his share of the rent and that he paid Tipsword $1,600 or 40 per cent of $4,000 and Tipsword denies that he received any rent payments or the $1,600. Those are the two

items in dispute in so far as concerns Tipsword's counterclaim.

The parties have agreed that if the finding is that Tipsword owes Hargas $8,143.-18, Tipsword is entitled to a credit against that amount of $357, and there is no dispute that if the $8,143 was paid by Hargas, Tipsword is also entitled to a credit of an amount representing interest at six per cent on $8,143 from January 1952 until whatever date it was paid.

Restating the issues, they are whether Hargas paid direct to his partner Tipsword the sum of $8,143.18 as his (Hargas's) share of the original capital, and whether he paid direct to Tipsword $2,080 rent for the 13 months of the partnership and $1,600 representing 40 per cent of $4,000.

While plaintiff averred in his second amended petition for an accounting that he had no adequate remedy at law, we need not determine whether this action was properly in equity or involved only law issues, because, in any event, the trial was to the court without a jury, and thus our review, whether the action was at law or in equity, is the same. Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289, 290 [1]; Cross v. Gimlin, Mo., 256 S.W.2d 812 [2, 3]; Parks v. Thompson, 365 Mo. 700, 285 S.W.2d 687, 692. Our province is to weigh the evidence and arrive at our own conclusions as to its weight taking into account the trial court's position to judge the credibility of the witnesses who testified. Trotter v. Trotter, Mo., 316 S.W.2d 482, 484 [2]. The burden of proof is, of course, upon the parties to prove their respective claims. 68 C.J.S. Partnership § 130, p. 566.

Hargas testified that he paid the total $8,143.18 to Tipsword in two payments, one of $5,000 and the other of $3,143.18; that both payments were in cash; that he did not have a regular checking account but kept his money in cash in a safe-deposit box in Pine Lawn Bank & Trust Company; that Tipsword had said at the time they agreed to go into business in January 1952

that "he could get or have about $20,000.00 and he would put the money in and start the business and that I could pay him later on whatever he asked me for. He asked [told] me 'When I want it, I will want it in cash'" (bracketed insert ours); that after they had operated three, four, five, or six months Tipsword said, " 'Something is coming up. You owe me $8,100.00, or whatever it was. I need $5,000.00 right at the present moment.' I said, 'All right, Tip, I will get it for you.' I went up and got the money and paid him in cash"; that Tipsword asked for the $3,143 balance some time prior to January 1953 and he paid him that amount, also in cash. While Hargas's testimony made it plain that he could not remember exactly when he paid the amounts of $5,000 and $3,143, his testimony was definite that he paid the $5,000 in 1952, and his testimony was that the $3,143 payment was made prior to January 1953 or at least prior to January 12, 1953. The clear meaning of Hargas's testimony on the subject was that he had paid the full $8,143 to Tipsword in cash during the year 1952 by money he obtained at the times of payment from his safe-deposit box in the Pine Lawn Bank & Trust Company.

The parties agree that the record of Hargas's visits to his safe-deposit box in the Pine Lawn Bank & Trust Company was before the trial court, although adduced after the trial court's interlocutory decree, and is properly here for our consideration. That record shows that Hargas did not enter his safe-deposit box between January 10, 1952 and January 16, 1953. There is no contention by Hargas that he paid any part of the $8,143 to Tipsword in the first ten days of January 1952. It is apparent to us that Hargas's testimony that he made the two cash payments to Tipsword in 1952 in the manner heretofore stated is conclusively refuted by record evidence.

Hargas argues, and apparently it was the trial court's view, that he made it plain in his testimony that he was not definite about when the payments were made and the fact that he was indefinite is understandable

in view of the fact that some five or six years had elapsed between the times of the events in question and the trial in March 1958. The record discloses, as heretofore noted, that Hargas's testimony, while indefinite as to the months of payment, was definite to the effect that the $5,000 at least was paid in 1952, and we think the only reasonable construction of his testimony is that he was definite that the $3,143 payment also was made in 1952 and, in any event, prior to January 16, 1953. Furthermore, while several years did elapse between the events and the time of trial, this action was instituted by Hargas in August 1954 shortly after the final partnership statement was issued, and while the details of a matter so important as the times of payment of the disputed amounts in question must have been fresh in his memory.

It is significant also that the bookkeeper for the partnership testified as Hargas's witness that she had caused the partnership books to show that the original capital had been contributed 60 per cent by Tipsword and 40 per cent by Hargas; that after the partnership had been finally terminated and apparently after all cars had been sold, sometime in early 1954 Hargas was at her home examining the books and records for the very purpose of determining the status of the accounts as between him and Tipsword; that she asked Hargas if he had made arrangements to get back his original investment and he had answered that "he didn't deposit any money originally in 1952." It is true that he had not originally contributed to the capital but it seems extremely unlikely that he would have answered as he did if he had thereafter paid direct to Tipsword the amount shown on the books as his original capital contribution; for if he had paid the amount later as he claimed, the books would have correctly reflected the status of the partners' capital accounts and his answer would have been directed to whether he had made any arrangement to recover the amount of his capital account,

rather than a denial that he had made an original contribution.

■ We find and hold that Hargas failed to sustain his burden to show that he paid $8,143 to Tipsword as his share of the original capital and that he is not entitled to recover that or any amount, but on the contrary Tipsword is entitled to interest at six per cent for 13 months on $8,143 and, as heretofore noted, it is agreed that upon such a finding Tipsword is also entitled to recover from Hargas $357.10.

■ We now consider Tipsword's counterclaim. As we have noted, the parties agree that Hargas was to pay Tipsword $160 a month rent and $1,600 representing 40 per cent of $4,000. Hargas says he was to pay the $160 a month in cash. Tipsword says Hargas was to pay $160 a month by check. Hargas's testimony was that he handed $160 in cash (for which he received no receipt) each month during the partnership operation to Tipsword, and Tipsword's testimony is that he did not receive any money from Hargas on account of the rent.

It was developed on Hargas's cross-examination that he had stated in a deposition taken a week prior to the trial that the partnership rent for the lot was to be $250 of which he was to pay 40 per cent or $100. When confronted with that testimony Hargas said that he had confused the rent to be paid during their first partnership (1949–1951) with the rent to be paid during the partnership in question, and that the first partnership rent on the lot had been $250. Tipsword testified that Hargas was not supposed to and did not pay any rent during their prior partnership.

Hargas testified that at the time the partnership was formed, there were certain assets on the used car lot, such as two small buildings and, from other testimony, we assume lights and perhaps other equipment, which were valued at $4,000, and Hargas said the agreement was that when Tipsword asked him for it, he was to pay "40 per

cent in cash of the value, of what he valued at $4,000.00." The inference from that testimony may be that whatever was valued at $4,000 became partnership assets, and that Hargas acquired a 40 per cent interest in those assets upon payment of $1,600. Such a construction is consistent with one of the claims in his second amended petition. Tipsword testified that the 40 per cent of the $4,000 figure was the amount Hargas agreed to pay for the use of the good will in an established used car lot; that is, for the right to use the facilities of the lot as a partner, for "intangible rights not for any items at all," and that the $4,000 valuation was simply a means of arriving at an amount to be paid. At one point Tipsword likened the payment to one for the right to do business under his "franchise." During his cross-examination, these questions and answers appear: "Q. Mr. Tipsword, this $4,000.00 that you said that you evaluated your business as you had it before Mr. Hargas came into you, did you eventually sell out those assets which he was to pay 40 per cent of? * * * A. Yes, I did dispose of that to the Kribs Auto Company down on Natural Bridge, on Grand at Natural Bridge. Q. * * * How much did you sell them for? A. Five thousand dollars."

While there might have been some question as to whether Hargas owed the $1,600 in view of the fact that defendant disposed of the assets valued at $4,000 for $5,000, plaintiff waived any claim in that respect and consequently the issue (as to the $4,000 item) is whether Hargas did in fact pay Tipsword the $1,600.

The evidence as to the claimed payment of the $1,600 is that the parties had drawn and delivered a $3,000 partnership check ($1,500 charged against each on the books) for the purpose of buying some rights in an oil lease through a gentleman in Alton, Illinois; that the man became ill, and in January 1953 they received back a check for $3,000 payable to them jointly. According to Hargas's testimony Tipsword

suggested that it would be a good time to pay him the $1,600 and that he (Hargas) therefore, endorsed the check, Tipsword cashed it, kept the money, and he, Hargas, paid Tipsword an additional $100 in cash. Tipsword agrees that they received a joint check for $3,000 but says that they each endorsed it and both went to the bank, cashed the check, and each received $1,500, and that Hargas at no time paid him all or any part of the $1,600.

It is obvious that there exists an irreconcilable conflict in the testimony on the essential fact issue whether Hargas paid Tipsword the rent and the $1,600 which depends for determination on the credibility of the parties as witnesses. If we had for consideration only the counterclaim we should at once defer to the finding of the trial court on the credibility of witnesses where, as here, "there is conflicting oral testimony involving a judging of the credibility of the witnesses who personally appeared * * *." Meyer v. Meyer, Mo., 285 S.W.2d 694, 699 [6–9]. It is apparent that the trial court found against defendant and in favor of plaintiff on the issue of credibility. But we have found to the contrary on plaintiff's claim for the reason that, as noted, we are of the opinion that record evidence conclusively refuted plaintiff's testimony. Even so, we should still defer to the trial court's finding on credibility as to the counterclaim if there were some fact or circumstance in the record which would justify our finding against plaintiff on the issue of his credibility as to his claim and at the same time defer to the trial court's finding against defendant on the issue of credibility as to the counterclaim. There is, however, no fact or circumstance in the record which enables us to

do so. On the contrary, to find against defendant on the issue of credibility we must of necessity find that Hargas did in fact make those payments based only upon his uncorroborated oral testimony.

It is true that the burden to prove his claim that Hargas owed him the rent and the $1,600 was on Tipsword. The parties agree that under their arrangement those payments were not to be reflected on the partnership books. Hargas admitted that he owed the amounts in question. Under the circumstances the only apparent evidence that Tipsword could offer to sustain his burden to prove that Hargas did not pay him was his oral testimony to that effect. Thus it seems to us that to hold Tipsword's evidence insufficient we should be finding that Hargas's testimony that he paid Tipsword was true. Having found against Hargas on the issue of credibility as to his claim, we should not, under the circumstances, find for him on the issue of credibility in so far as concerns the counterclaim. We, therefore, find and hold that Tipsword is entitled to recover on his counterclaim $160 a month for thirteen months and the further sum of $1,600.

It follows that the decree and judgment as to the respective claim of each party is reversed and the case remanded with directions to enter a judgment in accord with the views herein expressed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.