G. L. MORRIS, Jr., and Betty Morris, Plaintiffs-Respondents,

v.

Ralph W. HOLLAND, Jr., a/k/a Ralph Holland, et al., Defendants-Appellants.

No. 9700.

Missouri Court of Appeals, Springfield District.

Nov. 12, 1975.

James R. Hall, Doniphan, for defendants-appellants.

Robert C. Hyde, Hyde, Purcell, Wilhoit & Edmundson, Poplar Bluff, for plaintiffs-respondents.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

Plaintiffs, judgment creditors of defendant Ralph Holland, Jr. (Ralph), brought this action to set aside a conveyance of real

property by Ralph and his wife to defendant Ralph Holland, Sr. (Mr. Holland), as being in fraud of creditors. The trial court found the conveyance fraudulent within the meaning of § 428.020,[1] and ordered it set aside. Defendants appeal.

On January 26, 1971, plaintiffs obtained an Arkansas judgment against Ralph in the amount of $6,848.47. It was stipulated that the Arkansas judgment had been properly registered in Missouri. The record indicates that the Missouri judgment was entered on November 15, 1971. On November 4, 1970, Ralph and his wife conveyed a 526-acre parcel of land located in Ripley County, Missouri, to Mr. Holland by general warranty deed. The consideration recited is "One Dollar and other valuable consideration". The deed was acknowledged in Arkansas and recorded in Missouri.

The land was valued at $50 to $85 per acre, and was subject to mortgages totaling $9,760 and tax liens amounting to $1,797.85. Mr. Holland testified that the consideration for the deed consisted of the cancellation of a preexisting debt in the amount of $81,000 or $8,100—he could not recall which—representing the total of a series of loans he made to Ralph in " '68 and '70, '69 or '70." In each instance, Mr. Holland testified, he withdrew cash from his bank account to accommodate Ralph's needs. Mr. Holland could not recall the name or location of the bank. The loans were, again according to Mr. Holland, evidenced by notes, actually simple slips of paper, indicating the amounts withdrawn and loaned to Ralph. Mr. Holland and Ralph both signed the slips of paper, but the loans bore no interest and Mr. Holland received no security. The slips of paper evidencing Ralph's debt to Mr. Holland were not in Mr. Holland's possession; they were, he said, at Forrest City, Arkansas.

Ralph testified that during the late summer of 1970, his outstanding obligations amounted to "[t]wenty or thirty [thousand dollars], I don't know exactly." He was then in the construction business and owed money to "various suppliers" including Heiman Lumber Company, and Cairo Lumber Company. Ralph also owed federal taxes, various mechanical contractors and the Arkansas and Louisiana Gas Company. Ralph was asked what assets he had in August before execution of the deed in November, and he answered that he "didn't have any. . . . Considering what I owed". Ralph's further testimony was that he had borrowed money from his father on two occasions. "One time it was to pick up a check that didn't [clear] and the other time it was to make a payment to the Internal Revenue so that I could keep operating." Ralph "[j]ust wrote out a little note" to evidence the debt. Ralph's father had returned the notes after execution of the warranty deed, but they were in Ralph's "file at home" in Arkansas and were not produced at the trial.

Ralph further stated upon trial that the 526-acre tract in Ripley County was owned by him solely, that the land conveyed represented substantially all his assets except an "equity" in a house in Forrest City, Arkansas, which he and his wife owned; that he was "sure" his father was aware of his financial situation, and that his purpose in conveying the land was, "Well, I was indebted to him among other people, and I was going to lose the farm anyway. The other creditors, the farm would have been defaulted and repossessed by the time they could have got anything out of it. And I figure[d] that he might salvage it and get some of his indebtedness off of me." There was also evidence that in February 1971 Mr. Holland had attempted to obtain a loan from the First National Bank of Doniphan, Missouri, in order to purchase the land here involved from Ralph, but the application had been refused.

The trial court found as facts that the tract conveyed constituted substantially all

---

1. All references to statutes and rules are to RSMo 1969, V.A.M.S. and V.A.M.R.

Ralph's property; that before and after the property was conveyed, Ralph was insolvent; that Mr. Holland knew of Ralph's insolvency and accepted the deed with knowledge of Ralph's intention to place his property beyond the reach of his creditors, and that the conveyance was therefore in fraud of creditors and void.

In their brief, the defendants argue that since the cause was tried to the court, it is this court's duty to reach its own conclusions upon a review of both the law and the evidence without regard to the trial court's findings and give such judgment as the trial court should have given. In this connection, defendants cite Rule 73.01, para. 1(b), and *Harrison v. Harrison,* 339 S.W.2d 509, 514[5] (Mo.App.1960).

■ We are well aware that Rule 73.01, as amended March 29, 1974, requires us to review the case upon both the law and the evidence, and that the words "[t]he judgment shall not be set aside unless clearly erroneous" were eliminated when the rule was revised. Nevertheless, our understanding of present Rule 73.01 is that when the decision depends upon the credibility of the witnesses and the weight of the evidence, an appellate court should generally defer to the findings of the trial court unless it is satisfied they should have been otherwise, *In re Petersen's Estate,* 295 S.W.2d 144, 148[3] (Mo.1956); *Pfotenhauer v. Ridgway,* 307 Mo. 529, 536, 271 S.W. 50, 52[8] (1925); *Venie v. South Central Enterprises, Inc.,* 401 S.W.2d 495, 498[2] (Mo.App. 1966), even though the deference due those findings is precisely that and not a matter of statutory or constitutional inhibition. *Cross v. Gimlin,* 256 S.W.2d 812, 813[2, 3] (Mo.1953); *Venie v. South Central Enterprises, Inc.,* supra, 401 S.W.2d at 498[1]. The *degree* of deference due the factual findings of a trial court is not readily susceptible of precise articulation. See *United States v. Aluminum Co. of America,* 148 F.2d 416, 433[19–21] (2d Cir. 1945); 9 C. Wright and A. Miller, Federal Practice and

Procedure § 2585 (1971). Some older precedents require deference unless the finding is "clearly erroneous or against the weight of the evidence", *Long v. Von Erdmannsdorff,* 111 S.W.2d 37, 40 (Mo.1937), others speak of deference to the trial court's findings of fact "unless satisfied that they are against the weight of the evidence", *Manahan v. Manahan,* 52 S.W.2d 825, 827[2] (Mo. 1932), still others speak of deference to factual conclusions "unless the evidence is palpably insufficient to sustain [them]." *Held v. Reis,* 193 S.W.2d 17, 20[1] (Mo.1946). Whatever may be the appropriate phrase, we reject out of hand the suggestion that we should cast the trial court's findings aside. We do not believe Rule 73.01 was amended in order to convert the appellate courts into judicial second-guessers. See *Lundgren v. Freeman,* 307 F.2d 104, 114[18] (9th Cir. 1962).

■ In our opinion this is peculiarly a controversy for resolution upon the weight of the evidence and the credibility of the witnesses. The defendants contend, and the tenor of their evidence was that Ralph Holland simply transferred the property to his father in order to prefer his father as a creditor and save the property from foreclosure. The trial court might have accepted this evidence as true, and could have found the transfer perfectly lawful. Certainly Mr. Holland could have assumed the outstanding mortgages, as defendants claim, either by express or "implied" covenant in the deed, *Hafford v. Smith,* 369 S.W.2d 290, 295[7] and authorities cited at 296, n. 8 (Mo.App.1963), and Ralph could have lawfully preferred his father to other creditors. *Owens v. Owens,* 347 Mo. 80, 91, 146 S.W.2d 569, 576[2] (1940). The trial court was not, however, bound to accept the defendant's evidence. The deed does not expressly recite that Mr. Holland assumed outstanding indebtedness on the property; it merely recites that the land is conveyed "[s]ubject to all indebtedness on said property". The covenant of assumption could be proved by parol, but clear and convincing evidence of

that assumption was required, and proof of payment of some of the indebtedness against the property by Mr. Holland does not require the conclusion that he assumed the debt. *McFarland v. Melson,* 323 Mo. 977, 985–986, 987–988, 20 S.W.2d 63, 66–67[4][5, 6], 67–68[10] (1929). Moreover, defendants' evidence that Ralph was indebted to Mr. Holland at all is especially tenuous and unconvincing. Mr. Holland testified that he lent his son money, but could not recall whether the total sum was $8,100 or $81,000. The loans were made in cash, but Mr. Holland could not recall where he obtained the money. The transactions were evidenced by simple slips of paper. Defendant Ralph Holland had these slips in his possession—in Arkansas—but failed to produce them at either of the two hearings had in this cause. This failure to produce the slips evidencing loans authorized a strong presumption that they would not be favorable to defendants had they been produced, *Donet v. Prudential Ins. Co. of America,* 23 S.W.2d 1104, 1106[4] (Mo.App.1930); *Whitmore v. American Ry. Express Co.,* 219 Mo. App. 294, 304, 269 S.W. 654, 657[3] (1925), and perhaps, in these circumstances, authorized the conclusion that the slips of paper were not evidence of debt at all. 2 J. Wigmore, Evidence § 291, p. 186 (3d ed. 1940). Considering the evidence as a whole, the trial court could quite reasonably have concluded that Mr. Holland simply made Ralph a gift of the cash without any real expectation of repayment, and even if it accepted defendants' evidence concerning the loans, the irregular course of dealing between Ralph and his father would be a circumstance casting suspicion on the good faith of the conveyance. See *Johnston City State Bank v. Sowell,* 277 Ill.App. 10, 16–17[4] (1934).

■■■ Apart from these considerations, we find plaintiffs' evidence sufficient to show the conveyance fraudulent and void within the meaning of § 428.020. The "badges" or indicia of fraud which warrant an inference of improper motive have been stated many times and include 1) a conveyance to a spouse or near relative; 2) inadequacy of consideration; 3) the transfer of all or nearly all of the debtor's property; 4) insolvency; 5) retention of possession by the debtor, and 6) failure to produce available or rebutting evidence when the circumstances surrounding the transfer are suspicious. *Allison v. Mildred,* 307 S.W.2d 447, 454[7] (Mo.1957); *Harrison v. Harrison,* supra, 339 S.W.2d at 516[7]; *Matz v. Miami Club Restaurant,* 108 S.W.2d 975, 979[1, 2][3] (Mo.App.1937).[2] From our statement of the facts and what we have already said, it is apparent that the record manifests several such badges or indicia of fraud. The conveyance was made from son to father; the supposed consideration was forgiveness of or security for a debt which was at best merely a moral obligation to repay, and supposed assumption of a mortgage debt upon which the grantor continued to make payment after the transfer; defendant Ralph Holland testified that the land conveyed represented all the property he owned except a "couple of thousand" equity in a home at Forrest City, Arkansas, and as we have noted, defendants failed to produce available evidence tending to prove that the grantee was a bona fide creditor of the grantor. A strong inference of fraud arises from the concurrence of these circumstances. *Harrison v. Harrison,* supra, 339 S.W.2d at 516[7].

■■■ There remains only the question whether the record indicates such knowledge on the grantee's part as to charge him with notice of the debtor's purpose to hinder, delay or defraud his creditors. Direct and positive knowledge need not be demonstrated; it is sufficient if the facts and circumstances brought to the grantee's attention are such as to put an ordinarily

---

2. See also Note, Fraudulent Conveyances—Element of Intent in Missouri, 25 U.Kan.City L.Rev. 104, 105 (1957).

prudent person on inquiry and reasonably lead to knowledge of the grantor's fraudulent purpose. The grantee's notice and knowledge of such fraudulent purpose may be inferred from circumstances. *Allison v. Mildred,* supra, 307 S.W.2d at 454[5]. Here, the circumstances are such as to charge the grantee with such notice and knowledge. Mr. Holland had lent his son money on several occasions simply to keep his son's business operating; he was aware that a mortgage on the property was about to be foreclosed, and had attempted to borrow money to discharge the mortgage debt, and defendant Ralph Holland's testimony was that he was "sure" his father knew of his "financial situation"—i. e., difficulties— shortly before the transfer was made. Giving the chancellor's findings any degree of deference, his conclusions were undoubtedly correct and wholly equitable, and the conveyance in question was properly found to be fraudulent and void.

▉ Defendants' further assertion of error is that the trial court should not have set the deed aside because if it was in fraud of creditors, it was in fraud of Ralph's creditors only. In this connection, defendants cite *Bostian v. Jones,* 244 S.W.2d 1, 2–3[2–4] (Mo.1951), which indicates that a conveyance of land held by the entirety, not being subject to the claims of an individual spouse's creditors, may not be held fraudulent and void as to such creditors, even though the conveyance may hinder or delay the individual spouse's creditors. This claim of error must be rejected. Defendants rely on the fact that Ralph and his wife executed mortgages against the property as husband and wife, but as the plaintiffs note, their execution of the mortgage in such manner may have been to avoid the effect or supposed effect of § 474.150, para. 2, which provides that execution of any conveyance of real estate by a married person without the express assent of his spouse is deemed to be in fraud of the marital rights of his spouse. Moreover, the contention that the property conveyed was held by Ralph and his wife as tenants by the entirety flies in the face of Ralph's testimony, which was that he was the sole owner of the land.

For the reasons indicated, the judgment is in all respects affirmed.

All concur.